409 P.2d 95

Charles OTTS and Verna Otts, Plaintiffs-Appellants,

v.

DeVan BROUGH dba Brough Construction Co., Defendant-Respondent.

No. 9674.

Supreme Court of Idaho.

Dec. 14, 1965.

A. A. Merrill, Idaho Falls, and Merrill & Merrill, Pocatello, for appellants.

Clemons, Skiles & Green, Boise, for respondent.

SMITH, Justice.

Appellants, husband and wife, have appealed from a summary judgment dismissing their tort action directed against respondent, for recovery of damages for personal injuries sustained by appellant Charles Otts.

On or about June 1, 1963, respondent, hereinafter sometimes referred to as Brough, as general contractor, obtained a contract for the construction of two school buildings—the Eastside and Westside—for School District No. 321, Rexburg, Idaho.

Appellant Charles Otts, sometimes hereinafter referred to as Otts, obtained a copy of the plans and specifications of the school buildings in order to bid on the roofing and insulation. On June 11, 1963, Brough awarded to Otts, as a subcontractor, a contract for the installation of the roofing, insulation, damp-proofing, and sheet metal as it pertained to the insulation.

The plans for the Westside—a one-story building—showed an opening in the concrete main floor to the basement portion of the building. The opening, 39 inches wide and 7 feet and 4 inches long, was so constructed. During construction, the opening in the concrete floor was referred to as a "buckout," meaning that it was a framed in opening to accommodate metal work or metal pipe of the ventilating system to be installed by another subcontractor. Directly above the buckout there was, during construction, an opening in the ceiling about 3 feet by 3 feet in size. Workers used ladders in the buckout opening to carry materials to and from the main floor and the basement.

The main hall of the Westside building was 12 feet wide and extended in a north-south direction approximately 123 feet.

As the construction progressed and the interior walls were installed, the buckout opening was located in an area referred to as the janitor's room, which opened by a doorway, 30 to 32 inches wide, onto the main hall of the building.

An opening 3 feet by 5 feet in size extended through the wall of the janitor's room into the main hallway. This opening, intended to be covered by a metal grill, was 3 to 3½ feet above the main floor, adjacent

to and above the east end of the buckout opening.

On October 24, 1963, there was daylight coming into the janitor's room through the opening in the roof above the buckout, and from the main hall. On that date the insulation had not been completed, doors were still being installed, and certain phases of the electrical, plumbing, heating and ventilating systems, and the basement steps, were not completed.

During the morning of October 24, 1963, Brough called Otts to the job site relating to the progress of insulation of the building. The insulating material was required to be blown, by mechanical blowers, into areas above the ceiling sheetrock. The two men, Otts ahead of Brough, walked northerly down the main hallway. Otts was pointing to the ceiling requiring completing by installation of sheetrock (not covered by Otts' subcontract) before the insulation work could proceed. As they approached the area of the janitor's room, some 15 feet from the northerly end of the building, Otts entered the room still pointing to the ceiling areas, and fell into the buckout opening.

Otts sustained severe injuries occasioned by the accident for which he seeks recovery. His amended complaint shows that in the first instance he directed his action against School District No. 321, as the owner of the building, and Brough's two subcontractors, i.e., Bingham Mechanical & Metal Products, Inc., and A. C. Bidstrup, who had contracted the electrical, plumbing, heating and ventilating installations.

During the course of the action the trial court granted the separate motions for summary judgment of the four defendants and entered a separate summary judgment dismissing the action as to each defendant. Otts appealed from all the summary judgments but subsequently dismissed the appeal as to all the defendants except respondent Brough, thus leaving the action and the appeal solely between appellant Otts, a subcontractor, and respondent Brough, the general contractor.

Appellants in their amended complaint now allege in effect that Brough, the general contractor, in control of the premises for the purpose of the contracted work there carried on, owed the duty of using ordinary care to provide a safe place for Otts to work, including the duty to warn of dangers either known to the general contractor or discernible by him through ordinary care, and otherwise to use ordinary care to protect Otts from injury; that Brough allowed the buckout opening to exist behind a closed or swinging door, unguarded and without barricades, railing or other devices to protect the workers, including Otts; and that Brough breached the standard of reasonable care in that he did not provide any warning or other protection, and that although he knew or was charged with knowledge of such condition of danger, and having op-

portunity to warn Otts of the danger, he failed to do so and allowed Otts to enter into this area of danger.

Brough in his answer admitted the factual aspects of the accident, but denied negligence on his part as the proximate cause of the accident; and by affirmative defenses he alleged, as causative of appellant's injury and damage, his assumption of risk and negligence.

Respondent contends that the holdings of the trial court in granting the motions for summary judgment of the two defendant subcontractors, became the law of the case, res judicata and binding upon appellants Otts as to respondent Brough, inasmuch as Otts did not appeal from those summary judgments. In that regard respondent directs attention to the memorandum decision of the trial court on those motions wherein the court held in effect that the same duty rested upon all the subcontractors, as to keeping the premises reasonably safe, including the protection of the buckout opening, and that Otts was contributorily negligent insofar as the two defendant subcontractors were concerned, as regards the happening of the accident; also, that Otts would be considered a co-employee under the Workmen's Compensation Law.

■ The ruling of the trial court (except as in respect to the Workmen's Compensation Law) relates to the relationship and duties as between the three subcontractors, including Otts, but not as between Brough, the general contractor, and his subcontractors. Moreover, whether Otts would be considered as a co-employee with the two defendant subcontractors under the Workmen's Compensation Law, we need not decide inasmuch as appellants' action is no longer against those subcontractors but only against Brough, the general contractor. Hence the doctrine of the law of the case can have no application insofar as the action is directed only against Brough, the general contractor.

The trial court's ruling upon respondent Brough's motion for summary judgment is to the effect that the pleadings, depositions, files and records show no genuine issue as to any material fact, and that respondent Brough is entitled to judgment as a matter of law. I.R.C.P. 56(c). Appellants by their assignments contend that the trial court erred in so ruling and in dismissing their action directed against respondent, Brough.

■ The trial court when confronted by a motion for summary judgment must determine if there are factual issues which should be resolved by the trier of the facts. I.R. C.P. 56(c); Deshazar v. Tompkins, 89 Idaho 347, 404 P.2d 604 (1965); Anderton v. Waddell, 86 Idaho 220, 384 P.2d 675 (1963); Fairchild v. Wiggins, 85 Idaho 402, 380 P. 2d 6 (1963); Jones v. State, 85 Idaho 135, 376 P.2d 361, 3 A.L.R.3d 1158 (1962);

Sutton v. Brown, 85 Idaho 104, 375 P.2d 990 (1962); Allen v. Moyle, 84 Idaho 18, 367 P.2d 579 (1961); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960).

■ A motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions. Deshazar v. Tompkins, supra; Layrite Products Company v. Lux, 86 Idaho 477, 388 P.2d 105 (1964); Sutton v. Brown, supra; Jack v. Fillmore, 85 Idaho 36, 375 P.2d 321 (1962); Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965 (1961); Merrill v. Duffy Reed Construction Co., supra.

■ All doubts and all favorable inferences which may be reasonably drawn from the evidence will be resolved against the party moving for summary judgment. Deshazar v. Tompkins, supra; Jack v. Fillmore, supra; In re Kilgore's Estate, 84 Idaho 226, 370 P.2d 512 (1962); Sutton v. Brown, supra; Merrill v. Duffy Reed Construction Co., supra.

If there are conflicts and inconsistencies in the depositions of the opposing party, the court should consider only the portions most favorable to such party. Deshazar v. Tompkins, supra; Jack v. Fillmore, supra.

■ Owners or persons in charge of property owe to an invitee or business visitor the duty to keep the premises in a reasonably safe condition, or to warn the invitee of hidden or concealed dangers of which the owner or one in charge knows or should know by exercise of reasonable care, in order that the invitee be not unnecessarily or unreasonably exposed to danger. Alsup v. Saratoga Hotel, 71 Idaho 229, 229 P.2d 985 (1951); Pittman v. Sather, 68 Idaho 29, 188 P.2d 600 (1947); Hall v. Boise Payette Lumber Co., 63 Idaho 686, 125 P.2d 311 (1942); Martin v. Brown, 56 Idaho 379, 54 P.2d 1157 (1936); Carr v. Wallace Laundry Company, 31 Idaho 266, 170 P. 107 (1918). In Feeny v. Hanson, 84 Idaho 236, 371 P.2d 15 (1962), the Court approved the rule incorporated into a jury instruction, reading:

"* * * the duty to keep the premises safe for an invitee extends to all portions of the premises which it is necessary and convenient for the invitee to visit or use in pursuing the course of business for which the invitation was extended and at which his presence should reasonably be anticipated or to which he is allowed to go." 84 Idaho at 240, 371 P.2d at 17.

Such duty, however, only requires the exercise of ordinary care, and does not extend to dangers which are known to the invitee, or which are, or by exercise of ordinary

care, should have been observed by the invitee. Nance v. Ames Plaza, Inc., 177 Neb. 88, 128 N.W.2d 564 (1964); Anthes v. Anthes, 255 Iowa 497, 122 N.W.2d 255 (1963); Capobianco v. Yacovelli Restaurant, Inc., Mo.App., 360 S.W.2d 302 (1962); Broome v. Parkview, Incorporated, 49 Tenn.App. 725, 359 S.W.2d 566 (1962); Alsup v. Saratoga Hotel, supra.

■ A subcontractor is an invitee of the contractor in charge of the premises. Salemi v. Duffy Construction Corporation, Ohio App., 197 N.E.2d 397 (1964); McCall v. Otis Elevator Company, 219 Cal.App.2d 22, 23 Cal.Rptr. 44 (1963); Graham v. Arall, Inc., 80 S.D. 13, 117 N.W.2d 491 (1962); Dixon v. United States, 296 F.2d 556 (8th Cir. 1961); O'Leary v. James & Wunderlich, 192 F.Supp. 462 (D.C.Mont. 1960); Dingman v. A. F. Mattock Co., 15 Cal.2d 622, 104 P.2d 26 (1940); 65 C.J.S. Negligence § 43(4)b.

The record in support of respondent Brough's motion for summary judgment, in addition to the pleadings, are the depositions of various witnesses, including appellant Otis and respondent Brough.

Brough the general contractor stated that he was continually on the job site; that every day he supervised the entire work of the construction of the building; that he had certain workmen under him, such as carpenters; that as to the subcontractors, any supervisory acts would be directed to the subcontractors and not to their men.

The testimony of Otts shows that his 20 years' experience in the construction business was confined almost exclusively to roofing and insulation work. He had never poured concrete, nor worked as a carpenter, cabinet-maker or plumber, nor in mechanical installations. He stated: "I am not familiar with any work except roofing and insulation," also, that he did not know about so-called access holes, nor whether areas are left open for installation of heating ducts.

Otts stated that prior to October 24, 1963, he had never been in the Westside school building. He was not acquainted with the area or location of the buckout opening. The work of dampproofing exterior elevations of the cement walls had been accomplished by his men some two months or more before the date Otts sustained injuries. The "blowing-in" of insulation above the sheetrock ceiling had been in progress not over one and one-half days prior to the accident. This also was being done by Otts' employees, experienced in insulation work.

Early the morning of October 24, 1963, Brough telephoned Otts at his shop in Idaho Falls. Otts testified: "He [Brough] ordered me to get all my personnel and my forces on the job site for some reason * * * there was something going

wrong * * * so I sent my crew right up and followed after them. * * * I got there and * * * The ceiling was the main discussion * * * I remember there was various places in the building—we didn't get through all of them—I think we did get though—one hallway and maybe one room. * * *."

Brough testified that certain aspects of the insulation work "was holding up the painting and the accoustical tile, and, naturally, the architect and the school board was on my back to get the job done * * *," and that "Any insulation in the building would be holding up the rest of the work * * *, I thought it all was ready for insulation, and that was the reason I was anxious to get it completed so we could go ahead."

Brough stated that the installation of the ceiling sheetrock was necessary before the insulation could be blown-in, since "the sheetrock is what holds up the insulation * * * blown-in insulation."

Brough testified that the sheetrock was not on the ceiling of the janitor's room the day before the accident, October 23, 1963. He stated that the sheetrock was on the ceilings of the balance of the building, except for a few holes 2 feet square knocked through the ceiling sheetrock by electricians for electrical installations; his testimony is then to the effect that any insulation not yet installed in the building would be hold-ing up the rest of the work. His testimony with reference to the morning of October 24th then appears:

"Q. And what other parts were ready for the insulation men at that time?

"A. Well, I thought it all was ready for insulation, and that was the reason I was anxious to get it completed so we could go ahead * * *."

The evidence points to an existing situation which Brough deemed to be urgent, i. e., the lack of progress in the work of insulating the ceilings of the building which was "holding up the rest of the work.", Brough thought the ceiling areas were ready for the insulation to be blown-in. He wanted the work done as quickly as possible and told Otts "it would just have to be done." Brough and Otts were inspecting the ceilings, Otts looking upward and pointing to areas which had to be covered by sheetrock (by another subcontractor) before he, Otts, could proceed with the ceiling insulation. After inspecting the hallway, and while still pointing to the ceiling areas, Otts entered the janitor's room, pointing up to the ceiling, when the accident occurred. As Otts stated, "the ceiling was the main discussion." Under such circumstances, it was for the trier of the facts to determine whether Otts acted in a reasonable and prudent manner. In Mayzlik v.

Lansing Elevator Co., 241 Minn. 468 at 477, 63 N.W.2d 380 at 386 (1954), it is stated:

" * * * The rule is that, when there is some distraction or other reason which will excuse the failure to see that which is in plain sight, it can be said that a person has exercised that degree of care required by an ordinarily prudent person."

One whose attention is diverted is not to be held to the same closeness of observation as he would otherwise be; and where his act, but for such diverted attention, would have been negligent, under proof tending to show conditions throwing him off his guard, the question of negligence is for the jury. Flattery v. Goode, 240 Iowa 973, 38 N.W.2d 668 (1949); Ebel v. Bruzewski, 296 Mich. 654, 296 N.W. 715 (1941); Mayzlik v. Lansing Elevator Co., supra; Wills v. J. J. Newberry Co., 43 Cal. App.2d 595, 111 P.2d 346 (1941). See also Stowers v. Union Pacific R. Co., 72 Idaho 87, 237 P.2d 1041 (1951), wherein this Court stated: " * * * The presence or absence of contributory negligence must be judged by the conditions, circumstances and surroundings at the time of the accident and whether under such the person acted as a reasonably prudent person would have acted." 72 Idaho at 97, 237 P.2d at 1047.

The evidence is not in agreement as to the position of the buckout opening in relation to the door which opened into the janitor's room. The building plans showed the door as swinging outward into the hallway; however two witnesses testified that the door swings inward into the room; and whether the door was hung on the left side or the right side of the doorway as one enters the room was not shown. One witness testified that the distance between the opening and the doorway was "almost six feet at a diagonal." Another witness stated that the edge of the opening was about the width of the door, i. e., 30 to 32 inches to the left side of the doorway as one entered the room; also that the door swings inward and that "if you walk in with the door you would be right at the edge of the hole." The conflicting evidence as to the location of the opening in relation to the doorway entering into the janitor's room, and the door, was for the jury to resolve; and when resolved, then to determine, under the circumstances shown, whether Otts used ordinary care as he entered the room; also whether Brough, the general contractor, breached his duty of ordinary care owed Otts, an invitee; and whether Brough in the exercise of ordinary care, should have warned Otts of the existent potential danger of the opening, as he was entering the janitor's room, pointing up to ceiling areas; also whether under the existent circumstances Brough was negligent in failing to barricade the opening, inasmuch as the evi-

dence shows it was not barricaded, except at times by sawhorses used by workmen.

It was also for the jury to determine whether Otts by having been furnished a copy of the plans and specifications of the building in order to make his bid on the roofing and insulation as a subcontractor, knew or should have known of the location of the opening; and if so, whether his attention was excusably distracted under the circumstances shown, so as to insulate him against alleged contributory negligence on his part.

The evidence also shows that after the accident, by afternoon of October 24, 1963, the buckout opening had been barricaded. Mr. Wright, an employee of Otts, stated that he followed the ambulance that transported Otts to the hospital; that when he returned to the job site shortly after 1:00 o'clock, P.M., the opening was "boarded up now"; lumber had been nailed across the opening.

Mr. Lewis, an employee of another subcontractor, also testified that a barricade had been placed around the opening to a height of four or five feet.

▮ While such evidence could not be introduced for the purpose of showing antecedent negligence on the part of respondent Brough, as the one in charge of the area for the purpose of the work there carried on, nevertheless it was material as bearing upon respondent's recognition of a defect which he was duty bound to remedy. Zenier v. Spokane International Railroad Co. 78 Idaho 196, 300 P.2d 494 (1956); Shelton v. Southern Ry. Co., 193 N.C. 670, 139 S.E. 232 (1927); Carlton v. Rockland T. & C. St. Ry., 110 Me. 397, 86 A.334 (1913); Bianchetti v. Luce, 222 Mo.App. 282, 2 S.W. 2d 129 (1928); Carstens Packing Co. v. Swinney, 186 F. 50 (9th Cir. 1911); Annot. 64 A.L.R.2d 1297. In the light of such evidence, it was for the jury to determine whether a defect existed in the premises, and if so, whether Brough, as general contractor, was duty bound to remedy the same.

▮ Issues of negligence and contributory negligence ordinarily present questions of fact to be resolved by the jury. It is only where the facts are undisputed and where but one reasonable conclusion can be drawn therefrom that such negligence becomes a question of law. Deshazar v. Tompkins, supra; Foster v. Thomas, 85 Idaho 565, 382 P.2d 792 (1963); Yellowstone Pipe Line Co. v. Kuczynski, 283 F.2d 414 (9th Cir. 1960); Williams v. Collett, 80 Idaho 462, 332 P.2d 1032 (1958); Hubble v. Record, 80 Idaho 403, 331 P.2d 270 (1958); Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950); Owens v. Taylor, 62 Idaho 408, 114 P.2d 258 (1941); Adkins v. Zalasky, 59 Idaho 292, 81 P.2d 1090 (1938); Carr v. Wallace Laundry Co., 31 Idaho 266, 170 P. 107 (1918).

**136**

In the light of the evidence the issues of negligence and contributory negligence presented issues of fact to be resolved by a trier of the facts and forbade disposition of the same by summary judgment.

The defense of assumption of risk, interposed by respondent, generally presents a question of fact to be resolved by a jury, and becomes one of law only when the evidence is susceptible of no other interpretation than that the injured party assumed the risk. Deshazar v. Tompkins, supra; Williams v. Collett, supra; Bressan v. Herrick, 35 Idaho 217, 205 P. 555 (1922); Maw v. Coast Lumber Co., 19 Idaho 396, 114 P. 9 (1911).

In order that a defendant avail himself of the defense of assumption of risk, he must establish that the plaintiff knew the danger, understood and appreciated the risk therefrom, and voluntarily exposed himself thereto. Deshazar v. Tompkins, supra; Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964); Hooton v. City of Burley, supra.

Appellant Otts alleged a hazard, i. e., the unprotected opening, but whether it was a hazard of which he had, or was deemed to have had knowledge, and if so whether he appreciated the danger, but nevertheless voluntarily exposed himself thereto, or whether his exposure was excusable, all were issues for determination by the jury under the circumstances shown by the evidence in this cause, and were not subject to disposition by summary judgment.

The judgment is reversed and the cause remanded with instructions to reinstate appellants' action. Costs to appellants.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.