600 P.2d 1198

**Jose Manuel TORRES and Tomasita Torres, his wife, Plaintiffs-Appellants,**

v.

**PIGGLY WIGGLY SHOP RITE FOODS, INC., Defendant-Appellee.**

**No. 3416.**

Court of Appeals of New Mexico.

July 24, 1979.

Rehearing Denied Aug. 8, 1979.

Charles G. Berry, Marchiondo & Berry, P.A., Albuquerque, for plaintiffs-appellants.

Douglas A. Barr, Daniel Coit Lill, P.A., Albuquerque, for defendant-appellee.

## OPINION

ANDREWS, Judge.

Tomasita Torres (Torres) and her spouse filed an action against Piggly Wiggly Shop Rite Foods, Inc. (variously referred to as Shop Rite or Tenant), alleging bodily injury as a result of an alleged slip and fall on a slick grease area on the paved parking lot near the entry and exit point of the Shop Rite store located at a shopping center in Albuquerque, New Mexico. Shop Rite moved for, and was granted, summary judgment. Torres appeals.

The first issue raised by Torres is whether the Tenant was obligated by the terms of the lease and other agreements to maintain the parking lot in a safe condition. By a Lease Agreement dated January 18, 1956, Shop Rite leased a tract of land from Louisa B. Steinmann (Landlord) to build and operate a Shop Rite store which Shop Rite constructed on a portion of the tract in accordance with the Lease. At the time the store was constructed, it was the first and only store in what was later to become a shopping center. The accident occurred on the tract of land leased to Shop Rite.

The only provision in the record relating to repair, upkeep and maintenance of this portion of property was the Lease which provided in material part:

> The Landlord agrees that she will, during the time of this lease, make all structural repairs on said building. Landlord further agrees to be responsible for the installation and maintenance of all public utility facilities such as gas, water, electricity, telephone and sewage line [sic] up to the walls of the building, and Tenant agrees to be responsible for the installation and maintenance of all such public utility facilities within the building and within the walls of said building, and Tenant shall keep the plumbing, electric wiring, fixtures and plate glass in a state of repair and keep the interior painted during the term of this lease.

While there were several supplemental lease agreements entered into between the Landlord and Shop Rite over the years, two agreements are relevant. First, an Agreement dated August 29, 1958 provided in material part:

> That the parking area designated on Sheet No. 2 [which includes the parking area on the demised premises] of the proposed Shopping Center . . . shall be reserved for parking purposes for use, in common, by all persons owning or renting, now or in the future, store facilities upon any of the land . . ., as shown in Sheet No. 2 of the proposed Shopping Center, and for the use in common of the employees, customers, and business invitees of such persons.

The second, a Supplemental Lease Agreement dated March 4, 1970, required the Tenant to pay any increases in ad valorem taxes levied on the "real property leased to it." The Agreement defined "real property leased" to mean:

> [O]nly the premises exclusively leased to the Tenant [Shop Rite] and not the aforesaid released area or any common area.

The Lease and other applicable agreements did not expressly provide whether the Landlord or the Tenant had the responsibility to maintain the parking lot in a safe condition.

The common law rule is well settled that where a landlord fully parts with the possession of the premises and retains no control or right of control over them, and does not thereafter assume control, he is under no duty to inspect their condition while a tenant remains in possession, and is not chargeable with liability for defects not made by him or under his direction for failure to make repairs. *Mitchell v. C & H Transp. Co., Inc.*, 90 N.M. 471, 565 P.2d 342 (1977); relying on *City of Dalton v. Anderson*, 72 Ga.App. 109, 33 S.E.2d 115 (1945). There is an exception to this rule where the landlord has reserved the right to enter to make repairs, even in cases where he has not covenanted to make any repairs. In that situation, the landlord's liability continues after the leasing of the premises. *Mitchell v. C & H Transp. Co., supra* ; *Hogsett v. Hanna*, 41 N.M. 22, 63 P.2d 540 (1936). In addition, a further exception makes the landlord responsible for areas expressly or impliedly reserved "for the use in common of different tenants." *Hogsett v. Hanna, supra.* The necessary corollary to this rule is that a tenant in complete and sole control of leased premises is liable for any defects in those premises or for the failure to make repairs in them, absent a reservation by the landlord for common use of several tenants or a reservation by the landlord of the right to enter and make repairs.

The terms of the August 29, 1958, Agreement expressly reserved the parking area for the use, in common, of all the tenants in the shopping center. Therefore, the provisions in the Lease Agreement are such that, unless it is shown that in spite of the provisions, Shop Rite exercised control over the parking lot, the summary judgment must be affirmed. *Accord, Lommori v. Milner Hotels*, 63 N.M. 342, 319 P.2d 949 (1959); Annot. 48 A.L.R.3d 1163 (1973).

As her second issue, Torres argues that there exists a substantial issue of fact as to who actually had assumed the duty of maintaining the parking lot in a safe condition. Unquestionably, the burden was on Shop Rite to show the absence of a genuine issue of material fact. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). However, once Shop Rite had made a prima facie showing that it was entitled to summary judgment, the burden was on Torres to show that there was a genuine fact issue. In our opinion, Shop Rite made a prima facie showing that there was no genuine issue of fact that it had a responsibility to maintain the parking area in a safe condition. While there is some contradictory evidence to rebut the showing made by Shop Rite, such evidence does not create reasonable doubt as to whether a genuine issue exists.

Though it has been said that summary judgment should not be granted if there is the "slightest doubt" as to the facts, such statements are a rather misleading gloss on a rule which speaks in terms of "genuine issue as to any material fact," and would, if taken literally, mean that there could hardly ever be a summary judgment, for at least a slight doubt can be developed as to practically all things human. A better formulation would be that the party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. If there are such reasonable doubts, summary judgment should be denied. A substantial dispute as to a material fact forecloses summary judgment." *Goodman v. Brock*, 83 N.M. at 792, 498 P.2d at 679.

In regard to the issue of control, Torres cites an exchange in a deposition of a sacker for Shop Rite as follows:

Q. Had there been oil spots there in the past?

A. I had seen oil spots, yes.

\* \* \* \* \* \*

Q. Are you aware of anybody ever doing anything to put sand on this oil spot or anything like that?

A. They are supposed to. It is not my job.

Q. Who is supposed to do that?

A. I couldn't tell you. The sacker.

Q. Did you ever see them do that?

A. No sir, I never worked when it was supposed to be done.

Q. Do you know what people, the names of the people in your store that had that duty?

A. No, sir. Sackers come and go.

Shop Rite cites contradictory evidence in the deposition of Mr. Steinmann, who provided management assistance to the Landlord:

Q. Who has actually done the work of cleaning the parking area and keeping it clean and maintaining it?

A. A gentleman by the name of Mr. Hoehne.

Q. Who hires Mr. Hoehne?

A. We hire Mr. Hoehne.

Q. You do hire Mr. Hoehne?

A. Yes.

    *    *    *    *    *    *

Q. Outside of the inspections that you do make on the property, do the tenants call in complaints about holes in the parking surface, if there are any, to you to be repaired?

A. There could have been, yes.

    *    *    *    *    *    *

Q. Do you know who did the repair of the shopping center parking surface, if it has ever been?

A. We have had several people.

Q. You just call a local contractor or something?

A. Yes.

Likewise, Mrs. Steinmann, the Landlord, testified:

Q. You agree with your husband that since 1970 you have been the ones that have maintained the parking lot for the center?

A. To the best of our ability because of our integrity.

Q. Mr. Hoehne has been the man that does that?

A. Yes.

Q. And he has done it under your supervision?

A. Yes.

█ Thus, the facts clearly demonstrate that Shop Rite had not assumed such control over the common area as to become responsible for its maintenance and repair. The manager of the Shop Rite store, the director of real estate for Shop Rite stores, and the Landlord and her husband all testified by either affidavit or deposition that the Landlord, not the Tenant, employs people to care for the parking lot; that the Tenant exercises no control over the parking lot; and that the Landlord has cared for the parking lot for a number of years without assessing this Tenant or other tenants for any of these caretaking expenses.

█ As stated above, the Lease Agreements do not require that the Tenant care for the parking lot, and there is no showing Shop Rite exercised control over the parking lot. Torres's assertion that a "substantial issue of fact exists as to who actually had control or had assumed control and the responsibility of maintaining the premises in a safe condition" is unsupported by the record:

The trial court was apparently presented with two forms of Order, one granting the defendant's motion to dismiss with prejudice and one granting plaintiffs' motion to file their first amended complaint. The trial court correctly granted the defendant's summary judgment motion which, of course, left the plaintiffs free to file a separate law suit against the Landlord and owner of the property. We affirm.

IT IS SO ORDERED.

WOOD, C. J., and WALTERS, J., concur.