768 P.2d 1321

**Daniel H. HARRISON and Norma A. Harrison, husband and wife, Plaintiffs–Appellants,**

v.

**Tom TAYLOR and Jane Doe Taylor, Ed Struchen and Gloria Struchen, husband and wife, dba Ed's Office Products and Gloria's House in Bloom, John Does I thru V, Jane Does I thru V, and X, Y, Z, Corporations, Defendants–Respondents.**

No. 17002.

Supreme Court of Idaho.

Jan. 17, 1989.

Rehearing Denied March 17, 1989.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for plaintiffs-appellants. John R. Goodell argued.

Barrus, Bywater & Smyser, Burley, for defendant-respondent, Tom Taylor. Alfred E. Barrus argued.

Imhoff & Lynch, Boise, for defendant-respondent, Ed Struchen. Bradford M. Purdy argued.

BISTLINE, Justice.

This is a trip and fall case. The Harrisons brought a negligence action against the owner and lessor of a building for injuries sustained from a fall when her shoe allegedly caught the lip of a hole in a private sidewalk. The district court granted summary judgment for the defendants on the basis that the hole was an open and obvious danger.

On August 14, 1985, at about noon, plaintiff Norma Harrison and her husband made a business visit to Gloria's House in Bloom, operated by defendant Gloria Struchen, in order to pickup a floral arrangement. The sidewalks were dry that day. While approaching Gloria's House in Bloom, Mrs. Harrison encountered what she described as a hole. A section of concrete was missing from the private sidewalk due to "flaking." A slab had been removed and gravel remained. Mrs. Harrison stated in her deposition that she successfully negotiated the hole when entering the floral shop by stepping into the middle of it.

After being informed that her flowers were not ready, Mrs. Harrison began to leave the floral shop. She carried a checkbook and shoulder bag. As she exited, plaintiff walked on the sidewalk closest to the building and stepped over the hole with her right foot. She saw the hole. Her left foot caught the lip of the hole and plaintiff fell, breaking both arms. She hit the sidewalk with such force that the fall flattened a metal bracelet she was wearing. The hole was in the same condition it had been when she entered the shop.

The affidavit of James Annest establishes that prior to Mrs. Harrison's fall, he too tripped on the lip of the hole and informed defendants Struchen that the hole constituted a defect which should be remedied. His affidavit states that the defect extended across the full length of the sidewalk, or 49 inches. The width of the hole throughout its extension ranged from 20½ inches on the east side to about 8 inches on the west side. The south edge of the depression had ridges ranging from ½ inches to 1 inch in height.

Plaintiff and her husband commenced an action against the owners and the tenants alleging negligent maintenance and failure to repair the defect in the sidewalk. Daniel Harrison seeks damages for loss of consortium. The building is owned by a partnership which includes defendant Taylor. Defendant/tenants-in-possession are Gloria Struchen, doing business as Gloria's House in Bloom, and Ed Struchen, doing business as Ed's Office Products.

All defendants moved for summary judgment. A hearing was held. The Harrisons filed a motion to join additional defendants who owned the building in partnership with the Taylors. The trial judge granted defendants' motion for summary judgment based on the open and obvious doctrine. Subsequently, the court denied the motion to join additional defendants and amend the complaint. The court's ruling on the applicability of the open and obvious doctrine, having supplied a complete defense to the Harrisons' allegations, was dispositive of these later motions.

This appeal requires us to consider these issues:

(1) Whether the trial court erred by granting summary judgment for the defendants based on the open and obvious danger doctrine; and

(2) Whether the trial court erred by denying plaintiffs' motion to join the other members of the partnership, and the partnership itself, as defendants.

## I.

■ The judicially-created open and obvious danger doctrine has served this state long but not particularly with an even hand since the legislature established comparative negligence in 1971. To date, our cases have established two lines of authority. One line, represented by *Otts v. Brough*, 90 Idaho 124, 409 P.2d 95 (1965), states that owners or persons in charge of property owe to an invitee the duty to keep the premises in a reasonably safe condition or to warn of hidden dangers which the owner or person in charge knows or should know by the exercise of reasonable care. However, this duty does not extend to dangers known to the visitor. *Otts, supra*, 90 Idaho at 131–32, 409 P.2d at 102; *accord, McCasland v. Floribec, Inc.*, 106 Idaho 841, 683 P.2d 877 (1984); *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980).

The other line, represented by *Ryals v. Broadbent*, 98 Idaho 392, 565 P.2d 982 (1977) and *Keller v. Holiday Inns, Inc.*, 107 Idaho 593, 691 P.2d 1208 (1984), holds that there is an exception to the open and obvious danger defense when the injured party encounters a known danger while acting in the course of employment. The rationale for the exception is that an employee is faced with an economic compulsion, i.e., possible loss of employment, which implicitly encourages the employee to encounter the danger or hazard notwithstanding that he or she perceives the risk. *Keller, supra*, 107 Idaho at 596, 691 P.2d 1211; *accord, Marcher v. Butler*, 113 Idaho 867, 871, 749 P.2d 486, 490 (1988).

This principle is recognized in the jury instruction approved by this Court in *Ryals*. Writing for the majority, Justice Shepard stated:

Instruction 27 provides as follows:

'The owner or operator of premises may be liable for physical injuries to an invitee proximately caused by the unsafe or dangerous condition of his premises even though the danger is obvious and known to such invitee if the owner or operator of the premises had reason to expect that the invitee would proceed to encounter the obvious danger because to a reasonable man in his position the advantages of doing so (or the disadvantage of not doing so) would outweigh the apparent risk.'

That instruction was taken almost verbatim from Restatement of Torts, 2d ed. § 343A, and has been widely accepted since its adoption, Annot. 35 A.L.R.3d 230 (1971), and we find no error therein.

98 Idaho at 396, 565 P.2d at 990. *See also* Restatement (Second) of Torts, § 343A, comment f.

Although it is apparent that Section 343A of the Restatement (Second) of Torts was adopted and applied in *Ryals* and *Keller*, we base our decision today on a broader reading of our cases and of the legislative intent derived in Idaho's comparative negligence statute. We do not today simply extend the *Ryals/Keller* employee exception from the open and obvious danger doctrine to the facts of this case. Instead, as explained below, we simplify the standard of care applicable to both owners and occupiers of land—and to the invitees who come upon the premises. Fundamental to our decision is the legislative mandate that comparative negligence *shall* apply in all negligence actions. I.C. § 6–801.[1]

In *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985), we concluded that application of the implied assumption of risk doctrine is untenable in the era of comparative negligence established by I.C. § 6–801. We reasoned as follows:

> The scope of I.C. § 6–801 is broad. It is not limited to certain types of action; it is not limited by exceptions. Rather, it covers any action in which the plaintiff is seeking to recover on grounds of negligence. Section 6–801's intent is clear: Contributory negligence is not to be a complete bar to recovery; instead, liability is to be apportioned between the parties based on the degree of fault for which each is responsible.
>
> We find no reason that justifies the continued use of assumption of risk as an absolute bar to recovery in light of I.C. § 6–801's mandate and intent. Rather, we think reason and logic compel us to hold that § 6–801 applies to any use of assumption of risk as a defense, ...

Therefore, assumption of risk shall no longer be available as an absolute bar to recovery in any action instituted in this state. As we mentioned above, to hold otherwise, would be to perpetuate a gross legal inconsistency by prohibiting the use of contributory negligence as an absolute bar yet allow its effect to continue under the guise of assumption of risk.

107 Idaho at 989, 695 P.2d at 374.

We find support for this approach to the relationship of comparative negligence to assumption of risk in the language of Professor Schwartz:

> A rigorous application of implied assumption of risk as an absolute defense could serve to undermine seriously the general purpose of a comparative negligence statute to apportion damages on the basis of fault. This is perhaps the reason that every commentator who has addressed himself to this specific problem has agreed that plaintiff should not have his claim barred if he has impliedly assumed the risk, but rather that this conduct should be considered in apportioning damages under the statute.

(Footnotes omitted.) V. Schwartz, *Comparative Negligence* § 9.5, at 180 (2d ed. 1986). He notes only one jurisdiction "vigorously applies" assumption of risk as an absolute defense after the adoption of comparative negligence. V. Schwartz, at 180 n. 78.

We believe there are no significant differences between the implied assumption of risk and the open and obvious danger defenses. In fact, in this jurisdiction the doctrine first appeared in a case which virtually equated assumption of risk with the open and obvious defense:

> *The invitee assumes all normal, obvious and ordinary risks attendant on*

---

1. Idaho Code I.C. § 6–801 provides:

   **Comparative Negligence—Effect of contributory negligence.**—*Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence* or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. (Emphasis added).

*the use of the premises* and the owner is under no duty to reconstruct or alter the premises so as to obviate known or obvious dangers. 65 C.J.S., Negligence, § 50, page 541.

*Alsup v. Saratoga Hotel,* 71 Idaho 229, 236, 229 P.2d 985, 992 (1951) (emphasis added); cited in *Otts v. Brough,* 90 Idaho 124, 132, 409 P.2d 95, 103 (1965).

The open and obvious danger doctrine is recognized as a corollary rule to assumption of risk. 57 Am.Jur.2d § 277; Note, "Assumption of Risk and the Obvious Danger Rule," 18 Land & Water, L.Rev. 373 (1983). *See also, Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 518 (Tex.1978). The words are different but the conduct of a person injured when confronting a known danger is the same. Where *Salinas* has cut the heart out of assumption of risk, the same rationale and reasoning mandates an identical operation upon the open and obvious danger defense. *See Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 518 (Tex. 1978).

That the open and obvious danger defense operates inappropriately to bar recovery under the comparative negligence regime of I.C. § 6–801 was recognized by our Court of Appeals in its *Keller v. Holiday Inns, Inc.,* 105 Idaho 649, 656–57, 671 P.2d 1112, 1118–19 (Ct.App.1983):

> There is also a statutory reason in Idaho to treat an invitee's knowledge or the obviousness of a danger as a limitation of liability rather than as an excuse of duty. Since 1971, Idaho has been a comparative negligence state. I.C. § 6–801 provides that the plaintiff's contributory negligence does not bar recovery in a negligence action, so long as his negligence is not as great as the negligence of the person against whom recovery is sought. Rather, any damages awarded to the plaintiff are reduced in proportion to the amount of causal negligence attributable to him.
>
> *Prior* to the advent of comparative negligence, contributory negligence was an absolute bar to recovery. Thus, it

> made little difference whether a known or obvious condition excused a land possessor's duty to an invitee, or simply insulated the possessor from liability for any breach of such duty. In either event, the injured invitee could not recover. But under the comparative negligence system, the difference is profound. If duty is not excused by a known or obvious danger, the injured invitee might recover, albeit in a diminished amount, if his negligence in encountering the risk is found to be less than the land possessor's negligence in allowing the dangerous condition or activity on his property. In contrast, if the invitee's voluntary encounter with a known or obvious danger were deemed to excuse the land owner's duty, then there would be no negligence to compare—and, therefore, no recovery. The effect would be to resurrect contributory negligence as an absolute bar to recovery in cases involving a land possessor's liability to invitees.

105 Idaho at 655–56, 671 P.2d at 1118–19.

The relationship between the open and obvious danger doctrine and the complete bar created by contributory negligence, which our Court of Appeals scrutinized in *Keller, supra,* becomes apparent from a close reading of the critical language in *Otts v. Brough, supra:*

> * * * the duty to keep the premises safe for an invitee extends to all portions of the premises which it is necessary and convenient for the invitee to visit or use in pursuing the course of business for which the invitation was extended and at which his presence should reasonably be anticipated or to which he is allowed to go. [Citing *Feeny v. Hanson,* 84 Idaho 236, 371 P.2d 15 (1962) ] 84 Idaho at 240, 371 P.2d at 17.
>
> Such duty, however, only requires the exercise of ordinary care, and does not extend to dangers which are known to the invitee, or which are, *or by exercise of ordinary care,* should have been observed by the invitee.

90 Idaho at 131–32, 409 P.2d at 102–03 (emphasis added). Thus, if an injured par-

ty did not exercise ordinary care, he or she was contributorily negligent, and barred from any recovery. But now our civil law operates under the umbrella of comparative negligence. The open and obvious danger doctrine, born in the era (*Otts v. Brough, supra,* 1965) of contributory negligence, has been abolished legislatively through the adoption of I.C. § 6–801.

In this case, we are asked by the Harrisons to reverse a summary judgment in favor of the defendants. We note that some of our recent cases have expressed a reluctance to affirm a defense summary judgment based upon the absence of a duty owed by a landowner to an injured party. In *McKinley v. Fanning,* 100 Idaho 189, 595 P.2d 1084 (1979), a lessee was injured when she slipped on an icy sidewalk in front of the premises she was leasing from the defendant Fanning. Justice Bakes, writing for the majority, stated the following:

> The duty of care involved in this case is that owed by a landowner to pedestrians using a public sidewalk abutting the property. Certainly Fanning, who was the owner of the entire premises, lessor of the cafe and apparently the possessor of the hotel, had a duty to pedestrians using the public sidewalk to exercise reasonable care not to create a dangerous condition on the sidewalk. Fanning had a further duty to remedy any dangerous condition which his alterations of the property had caused if it jeopardized safe passage on the public sidewalk. See Restatement (Second) of Torts, §§ 57, 63 (4th ed. 1971); Annot., 18 A.L.R.3d 428 (1968); Annot., 88 A.L.R.2d 331, 361–64, 411–16 (1963); 93 Am.Jur.2d Highways, Streets, and Bridges, §§ 365, 369 (1968). Although Mckinley was the lessee of the cafe, at the time of the accident she nevertheless was still a member of the public, a user of the sidewalk, and therefore a person to whom Fanning owed that duty of care. However, because

McKinley was a lessee and may have had some knowledge of the dangerous condition, she may have had a separate duty not chargeable to the ordinary pedestrian using the sidewalk. But this difference between McKinley and the more typical pedestrian does not relieve Fanning of the duty to use due care to avoid creating a hazard on the sidewalk, *but only raises an issue of contributory negligence of McKinley which must be resolved by the jury, not the court on a motion for summary judgment.*

100 Idaho at 191, 595 P.2d at 1086 (emphasis added).

In *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), Chief Justice Donaldson writing for a unanimous court, quoted with approval from the New Hampshire Supreme Court in *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (1973):

> We thus bring up to date the other half of landlord-tenant law. Henceforth, *landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm....* A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others,[2] the probable seriousness of such injuries, and the burden of reducing or avoiding the risk.

106 Idaho at 258, 678 P.2d at 50 (emphasis added). He then announced the Court's unanimous holding, "[t]herefore, after examining both the common-law rule and the modern trend, we today decide to leave the common-law rule and its exceptions behind, and we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances." 106 Idaho at 258, 678 P.2d at 50.

In *Marcher v. Butler, supra,* two concurring justices recognized the applicability of the *Stephens* rule and stated the following:

> The trial court's reliance upon the traditional law pertaining to invitees was mis-

---

**2.** The likelihood of injury to others is an equivalent of foreseeability. Black's Law Dictionary, 584 (5th ed. 1979).

placed. The test is one of reasonableness under all the circumstances, not one of hidden or obvious dangers, or exceptions to the traditional general rule of non-liability for landlords. As we have said before, there is no justification for this general cloak of common law immunity for landlords. (citations omitted)

*Marcher v. Butler, supra*, 113 Idaho at 872, 749 P.2d at 491 (Bistline and Huntley, JJ., specially concurring).[3]

The "open and obvious danger" doctrine has been abolished or severely limited in a number of other jurisdictions. In a leading case, the high court of Texas jettisoned the doctrine in a unanimous (9–0) decision a decade ago. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). In Texas the doctrine has been dubbed the "no duty doctrine," and was formulated as follows: "[T]here is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof." *Id.*, 565 S.W.2d at 516 (citation omitted). In support of its action, the Texas court listed seven reasons; principal among them, for our purposes, was that the court had earlier severely limited assumption of risk and the Texas legislature

had adopted comparative negligence. *Id.*, 565 S.W.2d at 518.

Oregon and Missouri have accomplished the same result basing their decisions upon the incompatibility of comparative negligence with the open and obvious danger bar. *Cox v. J.C. Penney Co. Inc.*, 741 S.W.2d 28 (Mo.1987); *accord, Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800 (Mo.App.1988); *Woolston v. Wells*, 297 Or. 548, 687 P.2d 144 (1984).

Wyoming has abolished the open and obvious concept with regard to man-created hazards, but has retained it regarding natural accumulations of ice and snow. *O'Donnell v. City of Casper*, 696 P.2d 1278 (Wyo. 1985). In the not too distant future the Court may take the next step and abolish it in all circumstances. See, Note, "The Obvious Danger Rule," 21 Land & Water, L.Rev. 251 (1986).

Montana and Nebraska have clung to a "no duty" concept for natural accumulations of ice and snow,[4] but apply the Restatement (Second) of Torts § 343A rationale (*supra*, at p. 590, 768 P.2d at 1323) to man-created hazards. *Corbin v. Mann's International Meat Specialties, Inc.*, 214 Neb. 222, 333 N.W.2d 668 (1983), *Cereck v. Albertson's, Inc.*, 195 Mont. 409, 637 P.2d

---

**3.** On review, four justices upheld the Court of Appeals *Keller* decision, 107 Idaho 593, 691 P.2d 1208, holding "that a lessor may be liable to an invitee/employee who suffered injuries proximately caused by unsafe condition of the premises even though the danger is obvious and known to such invitee." 113 Idaho at 871, 749 P.2d at 490 (1988).

**4.** Prosser states the following regarding the "natural accumulation" rule:

In some jurisdictions, it is also true where the condition is one, such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, when, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. The jury in such cases may be permitted to find that obviousness, warning or even knowledge is not enough.[11]

[11] This is probably the growing view, known as the "Connecticut rule," which rejects the natural accumulation no-duty rule. See *Geise v. Lee*, 1975, 84 Wn.2d 866, 529 P.2d 1054;

*Hammond v. Allegretti*, 1974, 262 Ind. 82, 311 N.E.2d 821; *Quinlivan v. Great Atlantic & Pacific Tea Co.*, 1975, 395 Mich. 244, 235 N.W. 2d 732; *Kremer v. Carr's Food Center, Inc.*, Alaska 1969, 462 P.2d 747; cf. *Murray v. Eastern Maine Medical Center*, Me.1982, 447 A.2d 465 (water on stairs).

*Contra*, and following the "Massachusetts rule," see *Smalling v. LaSalle National Bank of Chicago*, 1982, 104 Ill.App.3d 894, 60 Ill. Dec. 671, 433 N.E.2d 713 (2–1) (no duty to guard against natural accumulations of snow and ice); *Brandert v. Scottsbluff National Bank & Trust Co.*, 1975, 194 Neb. 777, 235 N.W.2d 864; *Chadwick v. Barba Lou, Inc.*, 1982, 69 Ohio St.2d 222, 431 N.E.2d 660 (but sufficient evidence of highly dangerous, unexpected condition); cf. *Sherman v. Platte County*, Wyo. 1982, 642 P.2d 787 (obvious or known slippery ice).

Prosser and Keeton on Torts, pp. 427–9, 5th ed., 1984. *See* also, *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974).

509 (1981) (natural accumulation rule criticized by Morrison, J., concurring specially, reasoning that those who do nothing incur no liability, while those who take steps may).

Minnesota has gone further than most courts, having abolished the distinctions between invitees and licensees, in favor of a standard of reasonableness under the circumstances. *Adee v. Evanson,* 281 N.W. 2d 177 (Minn.1979).

Two important areas of federal law, having eliminated assumption of risk and adopted comparative negligence, have abandoned the open and obvious doctrine. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 408, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953); *accord, Santos v. Scindia Steam Navigation Co.,* 598 F.2d 480 (9th Cir.1979), *aff'd,* 451 U.S. 156, 68 L.Ed.2d 1, 101 S.Ct. 1614 (1981) (marine worker's compensation under the Jones Act); *Carter v. Union Railroad Co.,* 438 F.2d 208, 212 (3rd Cir.1971) (injured railroad workers' claims under Federal Employers' Liability Act).

At the summary judgment hearing before Judge Hart, and during oral argument before this Court, defendants returned repeatedly to the deposition testimony of Mrs. Harrison wherein she stated that she had observed and was aware of the hole in the sidewalk. Her statement was the primary basis upon which the trial court relied in granting defendants' motion for summary judgment. However, a question was raised at oral argument concerning whether an injured party must be aware merely of the condition of the sidewalk or, in addition, of its potential hazard, in order for the bar of the open and obvious danger to apply. It was a good question for which defendants supplied no satisfactory answer. Whether *the danger* of the hole was open and obvious was controverted by defendant Mr. Taylor's deposition testimony that he had walked over the hole many times but did not even notice it. Thomas R. Taylor Deposition, p. 87–88.

In view of the virtual identity of the open and obvious danger doctrine with implied assumption of risk, it is curious that, even though the trial court did not explore Mrs. Harrison's awareness of the alleged hazard created by the unrepaired sidewalk, the court still granted the defendants' motion. Implied assumption of risk, as it existed prior to our decision in *Salinas, supra,* generally presented a question of fact to be resolved by a jury. A defendant had to satisfy a jury that plaintiff knew of the danger, understood and appreciated the risk, and voluntarily exposed himself or herself to the danger. *Otts v. Brough, supra,* 90 Idaho at 136, 409 P.2d at 107.

This discussion points up the major flaw with granting defendants' summary judgment motion based on the open and obvious danger doctrine—a judge not a jury, is thereby ruling on quintessential issues of fact such as whether the injured party knew, or should have known of the danger, the obviousness of the danger, whether there was a justifiable reason for confronting the danger, and so on. However, today's opinion will correct this problem area in our law.

Accordingly, we join the numerous state and federal courts noted above and hereby retire the open and obvious danger doctrine. Henceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees who come upon their premises. We recognize the role *stare decisis* plays in the judicial process. But we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case, has proven over time to be unjust or unwise. In *Smith v. State,* a landmark decision limiting the doctrine of sovereign immunity, Justice Donaldson, writing for the majority, stated:

> The court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in light of modern reality and it is evident that the reason for the precedent no longer exists the abandonment of the precedent is not a destruction of *stare decisis* but rather a fulfillment of its proper function.

*Stare decisis* is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

93 Idaho 795, 801, 473 P.2d 937, 943 (1970).

Today's opinion harmonizes our case law with the comparative negligence statute passed by the legislature in 1971. We have been already operating in the context of comparative negligence; now the legislative policy expressed in I.C. § 6–801 will operate freely. The jury will compare the owner or occupier of land's behavior versus that of invitees who come upon the premises. Disputes in this area will normally present a jury question under particular facts, unless reasonable minds could not differ. *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084 (1979).

Under an ordinary negligence standard of care, the owner or occupier of premises is not held strictly liable for injuries to invitees who enter upon the property:

The duty not to be negligent is only a duty to take *reasonable* precautions against risk of undue harm. Even if the possessor were to come under the ordinary rule of negligence, therefore, he could always repel the obligation to take any precaution he could show to be unreasonable and burdensome.

Shindurling, "The Law of Premises Liability—is a Reasonable Standard of Care Unreasonable?" 13 Idaho L.Rev. 67 (1976) (citing 2 Harper & James, The Law of Torts at 1437 (1956)) (emphasis in original).

By removing the open and obvious danger bar we implement further the legislative mandate compelled by I.C. § 6–801: "Contributory negligence *shall not bar recovery* in an action by *any* person or his legal representative to recover damages for negligence . . ." (emphasis added). Issues involving the parties' negligence, if any, will normally be considered and decided by the jury, which is as it should be:

We must either trust the jury or get rid of it. One cannot afford to sympathize

for long with the view that a legal system must carry the burden of fictitious and obscurantist doctrine in order to keep vital issues away from that tribunal which was constituted to decide them.

Hughes, "Duties to Trespassers: A Comparative Survey and Revaluation," 68 Yale L.J. at 700 (1959).

In addition to the duty of ordinary care we recognize today for owners and occupiers of land toward their invitees, there is an additional basis for reversing the ruling of the trial court here. Either a tenant, or a landlord, or both, may be liable to a third party for injuries resulting from negligent repairs or failure to repair. Even in the absence of a specific lease provision, and with no controlling statute requiring him to make repairs, if a landlord voluntarily undertakes repairs he is bound to use reasonable and ordinary care or skill in the execution of the work. 49 Am.Jur. 2d § 795, p. 746 (see cases cited therein). Similarly, a tenant or lessee, having control of the premises is deemed, so far as third parties are concerned, to be the owner, and in case of injury to third parties occasioned by the condition or use of the premises, the general rule is that the tenant or lessee may be liable for failure to keep the premises in repair. 49 Am.Jur.2d § 981, p. 980 (see cases cited therein); *accord, Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 93 N.M. 408, 410, 600 P.2d 1198, 1200 (1979).

In this case the testimony was conflicting regarding whether Mr. Taylor or the Struchens had responsibility for maintenance of the sidewalk. Mr. Struchen contended that Taylor was responsible under the oral lease. Ed. Struchen Deposition, p. 40. Mr. Taylor testified that no maintenance agreement existed. Thomas Taylor Deposition, p. 34, 48–9. Regarding voluntary repairs, Mr. Struchen stated that on one occasion he repaired a sidewalk hole different from the one Mrs. Harrison fell in. Struchen Deposition, p. 35. Taylor testified that there was no clear cut procedure for repairs and sometimes he would do them and sometimes Struchen would. These contro-

verted issues of material fact, together with conflicting testimony over whether the sidewalk was a common area for use by all the business tenants of the building, demonstrate that the matter was not ripe for summary judgment. We reverse and remand.

The ruling of the trial judge allowed the application of the open and obvious doctrine to negate the well-settled rule of potential liability for negligent repairs discussed above. This points out another prime infirmity of the doctrine. Duties of care arise from a variety of sources such as the relationship between parties, the behavior of individuals, or the requirements of statutory and regulatory law. A judicially-created doctrine that crushes all other duties of care in its path has acquired the unintended power of a Frankenstein and must be dismantled. If it is not, the day may soon arise when a defendant will argue successfully before a trial court that the doctrine should negate even negligence *per se* liability for failure to meet a standard of care established by statute or duly delegated regulation.

## II.

■ On the same day that Judge Hart issued his opinion granting defendants' motion for summary judgment, counsel for the Harrisons made a motion to join additional parties defendant and to so amend their complaint. The Harrisons wished to join the partnership that owned the building where the Struchens operated their business, and the remaining members of the partnership. At a hearing where the trial court denied the Harrisons' motion to reconsider the granting of defendants' motion for summary judgment, the court also denied the motions to join and amend.

The court minutes of this hearing provide the only available insight into the court's basis for denial of the motion to amend:

Court finds: Motion to Amend would have been denied initially, since it would have caused a delay of trial. Motion to Amend denied. If statute of limitations comes into play, they may file a separate action to add defendants.

R., p. 108.

Whatever the merits of the trial court's denial of the Harrison's motion, our review of this issue is controlled by the fact that the Harrisons *did* file another action on July 28, 1987, in Cassia County which named the remaining defendants. Since we are remanding the case, the district court should consider consolidating these separate actions pursuant to I.R.C.P. 42(a) which provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Whenever the court is of the opinion that consolidation will expedite matters and will minimize expense upon the public and the parties, an order of consolidation should be made. *Branom v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 502, 509, 365 P.2d 958, 965 (1961). It is the policy of the law to limit the number of trials as far as possible. *Nelson v. Inland Motor Freight Co.*, 60 Idaho 443, 92 P.2d 790 (1939). When claims arise out of the same accident and one trial is sufficient to determine all the facts, separate trials would be a waste of time and expense. *Id.*, 60 Idaho at 449, 92 P.2d at 796.

In this case, the two actions filed in Cassia County are prime candidates for consolidation. There is an identity of law and facts between the Harrisons, the partners, and the partnership. A fundamental axiom of partnership law provides that all partners are liable jointly and severally, and the partnership is liable as an entity, for the wrongful act or omission of any partner acting in the ordinary course of business. *See,* I.C. §§ 53–313, –315 (1988).

Here all the relevant facts arose out of the same accident, and consolidation should be ordered for this reason as well as for hearing any cross or counter-claims that may arise among the parties.

Thus, this case is reversed and remanded for proceedings consistent with this opinion. Costs to appellants, no attorney fees awarded on appeal.

OLIVER and TOWLES, JJ. Pro Tem., concur.

JOHNSON, Justice, dissenting.

"Oh, it's a long, long time from May to December." So goes a refrain from a song that was popular a few decades ago. It's not much longer from May to January. Today, this Court announces the demise of a rule of law that was reaffirmed by a majority of this Court as recently as May of last year. This decision causes me to wonder how much confidence the bench and bar of this state will continue to have in the legal principles recently announced or reaffirmed by this Court.

In *Bates v. Eastern Idaho Regional Medical Center*, 114 Idaho 252, 254, 755 P.2d 1290, 1292 (1988), issued on May 31, 1988, we concluded "that a majority of this Court continues to adhere to the orthodox view ... that '[t]he duty to keep the premises safe for an invitee only requires the exercise of ordinary care, and does not extend to dangerous conditions which are known to the invitee, or which are or by the exercise of ordinary care should have been observed by the invitee.'" There, we also specifically rejected the rule that is adopted today.

While no rule of the common law remains inviolable forever, eight months seems a little too soon to upset settled precedent.

SHEPARD, C.J., concurs.