MERRILL, Circuit Judge:
This appeal is taken from a preliminary injunction issued by the district court enjoining appellant union from engaging in strike action or work stoppage, or otherwise interfering with the installation by appellee Collins Electric Company of San Francisco of certain fixtures in a building under construction in San Francisco. Appellant union contends that the injunction is forbidden by the Norris-LaGuardia Act, 29 U.S.C. §§ 101, et seq. Appellees contend that the injunction serves to enforce an arbitrator’s award which was issued following binding arbitration engaged in pursuant to the terms of a collective bargaining agreement; that the injunction thus acts as implementation of the arbitration process and falls within an exception to Norris-LaGuardia. These opposing contentions present the issue for decision on this appeal.
I. Facts
In 1976, Bank of America National Trust and Savings Association was engaged in construction of a computer data center at a location in San Francisco. On April 7,1976, appellee Collins Electric Company entered into a contract with the general contractor for installation of a lighting system. The system originally called for was a conventional system, and Collins procured the materials and fixtures required for such installation, including standard Westinghouse fixtures. In late November or early December, 1976, the Bank of America notified Collins that it wished to change its specifications from a conventional system to one including a prefabricated and fully integrated lighting and power distribution assembly called Electro/Connect, which had an approved rating from Underwriters Laboratories, Inc. (UL), as complying with the National Electrical Code and which could be connected to the Westinghouse lighting fixtures. The bank, together with its architects and engineers, sought approval from the Board of Examiners, Department of Public Works, City and County of San Francisco, for use of the system, stating:
“The system as proposed for use in San Francisco is U.L. approved and listed and will be connected to lighting fixtures which also will be U.L. approved and listed with a plug-in feature.”
It was also pointed out that there would be no need to “field-cut or wire any of the lighting system connections beyond the power distribution boxes.” The Board of Examiners granted approval.
Collins is a member of appellee San Francisco Electrical Contractors Association, Inc. (SFECA), which, on behalf of its members, has a collective bargaining agreement with appellant union. The contract contains a work preservation clause, an arbitration clause and a no-strike clause.[1]
Early in 1977 the union, learning of the proposed change in specifications to a prefabricated assembly which would eliminate a substantial amount of electrical work at the jobsite, advised Collins that in its view installation of the Electro/Connect system would violate the work preservation provisions of its collective bargaining agreement. A grievance was filed. With SFECA representing Collins, an arbitration hearing was held on March 17, 1977. The arbitrator’s decision was announced May 3, 1977, to be followed by an opinion. The decision read: “The grievance is denied. ' Thus the eim ployer may use the Electro/Connect system in the Bank of America fixture in *531 stallation job at Market and Van Ness without violation of the collective bargaining agreement or the National Labor Relations Board Act.”
Collins then returned the Westinghouse units to the manufacturer in order that the plugs by which the Electro/Connect assembly would be connected might be factory installed and the Westinghouse units (as well as the Electro/Connect units) thus qualify for a UL rating.
The union, claiming to be surprised at this development, filed a new grievance on May 19, 1977, contending that the proposed installation of the plugs by Westinghouse constituted a new violation of the work preservation clause.
The arbitrator’s opinion on the original grievance was filed May 26, 1977. It stated, in part:
“In the present dispute, the use of an Electro/Connect system has been prescribed by the Bank of America, the owner of the project. Collins Electric is powerless to provide the work which the Union demands unless the Bank of America is prepared to forego the use of the Elec-tro/Connect system. Thus, in the present case, as in Enterprise Association [429 U.S. 507, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977)] and in three of the four National Woodwork cases, [386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967)] the Union cannot lawfully insist upon compliance by Collins with the work preservation in the collective bargaining agreement. Collins has no control over the type of installation to be made on the project, and therefore, the pressure exerted by the Union cannot properly be said to be pressure addressed to the labor relations of Collins vis-a-vis the members of Local 6 employed by it.”
SFECA then refused to recognize the union’s new grievance, contending that it had already been resolved by the arbitration award.
The union then filed an unfair labor practice charge with the National Labor Relations Board, asserting that SFECA, on behalf of Collins, refused to honor the arbitration grievance provisions of the contract. The Board summarily rejected the claim, stating:
“The investigation disclosed insufficient evidence to support the charge in that the Union apparently had ample opportunity to solicit the information [that the Westinghouse unit would be factory modified] by questions during the arbitration proceeding and failed to do so. In this regard it is noted that the Union also failed to move for reopening of the arbitration proceeding even after it received the allegedly new knowledge of the nature of the work involved. Under all of these circumstances, it is concluded that further proceedings are not warranted. I am, therefore, refusing to issue complaint in this matter.”
On June 24, the union sent SFECA a letter of ultimatum. It stated that, “commencing at 8:00 a. m. on Monday, June 27,” IBEW Local 6 would order electricians off the Collins Electric job at the Bank of America “to protest the SFECA’s refusal to participate in the Labor-Management Committee process” in connection with the union’s May 19, 1977, grievance. On June 27, the electricians left the Bank of America job.
On June 30, 1977, the union and SFECA stipulated to a confirmation of the May 26 arbitration award in the superior court of California. On the same day this action was commenced by SFECA seeking an injunction against the work stoppage. A temporary restraining order was issued. Hearings followed in July, 1977, resulting in the preliminary injunction from which this appeal is taken.
II. Discussion
Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, enacted in 1932, denies federal courts jurisdiction to issue injunctions against various concerted activities, including strikes and work stoppages “in any case involving or growing out of any labor dispute.”
*532 Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, enacted in 1947, confers jurisdiction on the federal courts, without respect to amount in controversy or citizenship of the parties, of suits for violation of contract between an employer and a bargaining representative of its employees.
Section 301 was felt to raise a question as to whether the broad language of Norris-LaGuardia was to be tempered in cases where concerted activities were in violation of the no-strike and arbitration clauses of a collective bargaining agreement. A divided court, in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), held that Taft-Hartley had not “impliedly repealed” Norris-LaGuardia and that an injunction would not lie to halt a strike growing out of a grievance which should have been (but was not) submitted to arbitration.
Eight years later, Sinclair was overruled in Boys Markets v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). It was there held that Norris-La-Guardia “does not bar the granting of in-junctive relief” to halt a strike and picketing pending arbitration pursuant to the grievance procedure to which the parties had agreed. 398 U.S. at 253, 90 S.Ct. at 1594.
In 1976, the Boys Markets holding was narrowed in Buffalo Forge Co. v. Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022. There it was held that a strike in violation of a contract’s grievance procedure is not subject to injunction unless it has as its purpose advancing the union position upon an arbitrable grievance which has not gone to arbitration.
While this line of authority was developing it had, since 1960, been recognized that an arbitrator’s decision that a strike was in violation of a contract and his order to cease and desist were subject to judicial enforcement by injunction. Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Pacific Maritime Association v. ILWU, 454 F.2d 262 (9th Cir. 1971); Alyeska Pipeline Service Co. v. Teamsters, 557 F.2d 1263 (9th Cir. 1977). Most recently the proposition was recognized in Buffalo Forge, supra:
“Furthermore, were the issue arbitrated and the strike found illegal, the relevant federal statutes as construed in our cases would permit an injunction to enforce the arbitral decision. Steelworkers v. Enterprise Corp., supra.”
428 U.S. at 405, 96 S.Ct. at 3147.
In the cases just cited, the arbitrator’s award itself specifically considered and found improper the concerted action concerning which the injunction was sought. They did not involve concerted action after an arbitrator’s award which is or may be in disregard of that award as this case does. The union strenuously contends that for this reason our case is distinguishable; that to allow an injunction here would not serve to advance the goal of arbitration as a method of resolving industrial disputes. The strike, it asserts, did not have as its purpose the advancing of the union position respecting the work preservation clause. Rather its purpose was to protest the refusal of SFECA to submit that dispute to arbitration. Thus, it contends, the injunction operates to defeat the arbitration clause rather than to advance it. The company, on the other hand, contends that the injunction enforces the arbitration clause which made the arbitrator’s award binding on the union.
The only Supreme Court case we have found to present the problem did not reach the question, but we feel that a discussion of the case would be useful. In Longshoremen v. Marine Trade Association, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), a dispute had arisen as to the hours of pay to which longshoremen were entitled when, after reporting for duty, their employment was postponed (“set back”) because of weather. The union contended for four hours; the association for one hour. Grievance procedures were followed, culminating in arbitration resulting in a decision favoring the association. Three months later, union members refused to unload a ship unless promised four hours pay for a “set back.” The union sought to arbitrate the question. The association refused, contend- *533 iug that the prior award had settled the matter and established the terms of the collective bargaining agreement upon the question. The association commenced proceedings in the district court to enforce the award. Before the court could take action the employer met the union demands. The court retained jurisdiction. Two months later, another work stoppage occurred and the association pressed the court for an order requiring the union to comply with the arbitrator’s award. The union took the position that the set-back disputes were separate and distinguishable, and that the award related only to the first. The district court disagreed and ordered the union “to comply with and abide by the [said] Award.” Counsel for the union sought more specific directions — “I don’t know what it means.” The court refused to elaborate. Further set-back disputes again disrupted work and an order was issued by the district court requiring the union and its officers to show cause why they should not be held in contempt. At the contempt hearing counsel for the union again sought to ascertain precisely what acts were proscribed by the original order and were now being asserted as violations. The court again refused to elaborate. The union was held in contempt. The court of appeals affirmed and the Supreme Court granted certiorari. Before the Supreme Court the union contended that the order amounted to an injunction illegal under Sinclair. The association contended (as does SFECA in the case before us) that it was no more than an enforcement of an arbitration award. The Court did not reach the question. It held that since the award itself “contains only an abstract conclusion of law, not an operative command capable of ‘enforcement,’ ” the court’s order should have supplied this specific command and in its absence was “too vague to be sustained as a valid exercise of federal judicial authority.” Mr. Justice Brennan concurred in the result, reserving his disagreement with Sinclair. Mr. Justice Douglas concurred in part and dissented in part. He would have distinguished Sinclair. Here, he noted:
“ * * * the union in fact submitted to the arbitration procedure established by the collective bargaining agreement but, if the allegations are believed, totally frustrated the process by refusing to abide by the arbitrator’s decision. Such a ‘heads I win, tails you lose,’ attitude plays fast and loose with the desire of Congress to encourage the peaceful and orderly settlement of labor disputes.”
389 U.S. at 79, 88 S.Ct. at 209.
We note that this case preceded Boys Markets by three years. In our judgment Boys Markets cannot sensibly be construed not to cover the union’s obligation to abide by the arbitrator’s decision. If the process can be frustrated by such refusal, submission to arbitration would be meaningless. In our view when Boys Markets, in overruling Sinclair, adopted the sense of the Sinclair dissent, 398 U.S. at 249, 90 S.Ct. 1583, it also adopted the sense of Mr. Justice Douglas’ language in Marine Trade Association as we have quoted it.
Mr. Justice Douglas would have remanded for determination of the question whether the current dispute was factually different from the earlier one on which the award was based. 389 U.S. at 79, 88 S.Ct. 201. That, to us, is the critical question here — whether the substance of the second dispute formed a part of the first dispute, and was thus resolved by the resolution of the first. If so, a refusal to submit to arbitration a question that has already been subject to arbitration can hardly be said to violate the arbitration clause. The union’s insistence on arbitration under such circumstances itself amounts to a violation of the clause through a refusal to accept the award already handed down.
The union contends that the substance of the second dispute was different from that of the first; that the question originally submitted to arbitration had only to do with the Electro/Connect assembly unit and had nothing to do with the modification of the Westinghouse unit. The district findings on this contention were flatly to the contrary.
*534 The union contends, however, that this decision was not for the court to make. It contends that the question of how an arbitration award is to be construed should itself be resolved by arbitration; that the question remains one as to the extent of the contractual obligations and the meaning of the contractual provisions with the arbitrator’s construction superimposed on the contractual language.
We cannot agree. The court is not construing the contract; it is construing the holding of a tribunal as to the contract’s meaning. If, as we have held, the court is to have authority to enforce the award, it must have the authority to construe it. To hold otherwise would in effect deny the court power to enforce, since every effort made in that direction would successively and interminably require further arbitration.
This is not to say that ambiguous language may not be referred back to the author for clarification. Had that been sought here by the union this case might not be before us now. It was not sought, however, as the NLRB noted. The union instead stipulated to a confirmation of the arbitrator’s award and sought a fresh start with a new grievance, which could be presented to a new arbitrator. Nor do we preclude remand to the authoring arbitrator by the district court within its discretion when it finds the meaning of an award to' be uncertain. Even accepting such judicial discretion, however, failure to remand here was not abuse.
The district court found:
“12. There was before the arbitrator the specific question as to whether the installation of a complete Electro-Con-nect system was a violation of the collective bargaining agreement, and what defendant seeks herein to do is to take a portion of that installation and again engage in said grievance procedure despite the fact that the portion is part of the whole system, which point was fully discussed in its entirety before said arbitrator.”
This was not clearly erroneous. The record as we have quoted it shows that the Bank of America, in specifying the Elec-tro/Connect system, had in mind not only the Electro/Connect assembly unit with its UL certificate of approval, but also lighting fixtures with plug-in features that would themselves carry a UL certificate and eliminate any need to wire the system connections in the field. Factory modification of the Westinghouse unit was thus rendered essential, and Collins was as powerless to provide the work demanded by the union as to that unit as it was to provide that which the Electro/Connect unit itself had replaced.
We conclude that the preliminary injunction was properly issued by the district court in order to enforce the arbitrator’s award.
Affirmed.

. The grievance provisions in the contract state, in relevant part:
“Sec. 4 During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein. ******
Sec. 6 Problems or disputes between the UNION and the EMPLOYER [SFECA]/Em-ployer [the Company] shall be referred to the UNION representative and the contractor’s representative. If they are unable to resolve the matter, it shall be referred to the Labor-Management Committee.
* * # * * *
Sec. 8 Should this Committee fail to agree or to adjust any matter, such shall be referred to an arbitrator * * *. His decision shall be final and binding * * *.”