781 P.2d 224

**Norman E. ARRINGTON and Helen Arrington, husband and wife, Plaintiffs–Appellants/Cross–Respondents,**

**v.**

**ARRINGTON BROTHERS CONSTRUCTION, INC., an Idaho corporation, Defendant–Respondent/Cross–Appellant.**

**No. 17343.**

Supreme Court of Idaho.

Sept. 22, 1989.

Lary C. Walker, Weiser, and Nathan S. Arrington, San Diego, Cal., for appellants cross-respondents. Nathan S. Arrington argued.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for defendant-respondent. J. Walter Sinclair argued.

BISTLINE, Justice.

Defendant Arrington Brothers Construction, Inc. (hereafter ABC) is a general contractor. In 1985 ABC secured a contract to

remodel a church in Hollister, Idaho. Plaintiff Norman Arrington (hereafter Arrington) subcontracted with ABC to do the electrical work on the church.

On February 5, 1985, Arrington (while doing electrical work as required by the contract) fell sixteen feet from a scaffold owned and erected by ABC. He suffered serious injuries to his wrist, pelvis, and leg.

Arrington's complaint against ABC sought recovery of general damages, medical expenses, lost wages, and Mrs. Arrington claimed damages for loss of consortium. Arrington's primary argument in resisting summary judgment for dismissal was based on ABC's failure in not having guardrails. Because guardrails are required by OSHA regulations, ABC is said to have been negligent *per se*. ABC concedes that the lack of guardrails on the scaffolding violates OSHA regulations.

The district court awarded ABC's motion for summary judgment on two grounds. First, the court held that ABC as a general contractor owed subcontractor Arrington no duty under OSHA to install guardrails. Second, the court ruled that because the lack of guardrails was an open and obvious danger to Arrington, he, as a matter of law, did not have a valid claim against ABC. We disagree, and accordingly reverse and remand.

In ruling from the bench in favor of ABC, the district court said in pertinent part:

I find under the laws that exist in the State of Idaho that OSHA generally only applies to the relationship between an employer and employee. Now, there is case law from other states indicating a broader applicability of OSHA governing others who might be on the construction site. This court does not need to rule so generally. It is clear to me at least in Idaho OSHA does not apply to the relationship between a general and his subcontractor.

And that is the case here where Mr. Arrington, the plaintiff, was a subcontractor on this job to build the church. And Arrington Brothers does not have a duty under OSHA to protect him as it would its own employee under the OSHA regulations.

I think that does then leave us with a general standard—or a general duty under the other case as both sides have articulated. And I think reading *Otts* it becomes clear that the duty under such a circumstance is a duty of ordinary care, unless the danger is known or in the exercise of due diligence should have been known.

Here the record reflects that while the scaffolding was in place and did belong to Arrington Brothers Construction Company, Mr. Arrington, the plaintiff, had both been informed that no guardrail was there, one needed to be placed there. He fully knew that OSHA would have required it, that due care, I think, would have required a guardrail there. And I think that the danger here that existed that caused the injury was clearly known to the plaintiff, Mr. Arrington. And therefore I will order that summary judgment be granted in favor of the defendant and against the plaintiffs.

The issues presented by the Arringtons are: (1) Claimed trial court error in ruling that an OSHA violation does not establish negligence *per se* when the injured party is a subcontractor on a multi-contractor site; (2) Claimed trial court error in holding that ABC had no duty of ordinary care to Arrington because the lack of scaffolding was an open and obvious danger.

## I.

It is noteworthy that the trial court in finding "under the laws that exist in the State of Idaho that OSHA generally applies to the relationship between and employer and employee" cited no Idaho authority to support the proposition. As discussed *infra*, we determine that authority does exist to the contrary and, moreover, that there is good authority from other jurisdictions supporting a view opposite to that entertained by the trial court.

In Idaho it is well established that administrative regulations may define the applicable standard of care and that violation of

such regulations may constitute negligence *per se*. *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 386, 744 P.2d 102, 114 (1987) (Bistline, J. dissenting); 858 F.2d 550 (9th Cir.1988) (opinion following answer to certified questions following dissenting opinion); *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1987); *Brizendine v. Nampa Meridian Irrigation Dist.*, 97 Idaho 580, 586, 548 P.2d 80, 86 (1976). In *Sanchez*, Justice Huntley, writing for a unanimous Court on this issue delineated the requirements needed to establish negligence *per se* based on violation of a statute or regulation:

> Several criteria must, however, be met before negligence as a matter of law will be found. First, the statute or regulation must clearly define the required standard of conduct [citation omitted]; second, the statute or regulation must have been intended to prevent the type of harm defendant's act or omission caused [citation omitted]; third, the plaintiff must be a member of the class of persons the statute or regulation was designed to protect [citation omitted]; and fourth, the violation must have been a proximate cause of the injury [citation omitted].

*Sanchez v. Galey*, 112 Idaho at 617, 733 P.2d at 1242.

Here the dispute between the parties centers on the third *Sanchez* requirement—that the plaintiff must be a member of the class of persons that the statute or regulation was designed to protect. Arrington argues that the OSHA regulations were designed to protect any person who could reasonably be expected to be on the job site. This would include both employees of subcontractors and subcontractors themselves. ABC contends that the regulations were designed to protect only the immediate employees of the general contractor but not employees of subcontractors and certainly not subcontractors themselves. Both positions find support among the federal circuit courts of appeal and various state courts.

The Fifth Circuit has adopted a firm rule that OSHA duties run from an employer to his employee only. *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir. 1981). This position is based on a reading of the OSHA act itself which concludes that there is no legislative history or specific statutory language which establishes that Congress intended to create a duty on behalf of the employer with respect to persons other than its own employees. *Melerine*, 659 F.2d at 711. Further support is found in a reading of various OSHA provisions which include numerous references to *his* employees, "his responsibility," "his own employees" as evidence that OSHA duties only run between employers and their immediate employees. *Melerine*, 659 F.2d at 711. However, this position appears to prevail only in the Fifth Circuit and the occasional state jurisdiction. *See Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 269–70 (Iowa 1977). An opinion of the Fourth Circuit was formerly cited for the position adopted by the *Melerine* court. *Brennan v. Gilles and Cotting, Inc.*, 504 F.2d 1255 (4th Cir.1974). The *Brennan* decision was based upon deference to the judgment of the Occupational Safety and Health Regulatory Commission's interpretation of its own regulations. When *Brennan* was decided the OSHRC advanced the view that an employer could be cited in an administrative proceeding only for violations of OSHA regulations that endanger the employer's immediate employees. But, the commission later changed its position and concluded that an employer could be cited for violations that endanger other employers' employees. *See Melerine*, 659 F.2d at 711 n. 16.

In contrast, at least four and perhaps five federal circuit courts of appeal adhere to the proposition that an employer's OSHA duties may run not only to his own employees, but to any other employees or persons in general on a multi-employer work site. The leading case in this line of authority is *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799 (6th Cir.1984). The *Teal* court based its position on a broad reading of the general congressional purpose motivating the Occupational Safety and Health Act and upon principles of

statutory construction applied to 29 U.S.C. § 654(a):

> DuPont argues that the stated purposes for the Occupational Safety and Health Act of 1970 reveal that Congress did not intend to impose a duty upon employers to protect the safety of an independent contractor's employees who work in the employer's plant. In support of this proposition, DuPont relies upon the plain language of the Act which provides that 'each employer shall furnish to each of *his* employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to *his* employees.' 29 U.S.C. Sec. 654(a)(1) (emphasis added). Although DuPont's legal position is not without support, *see Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir.1981), we believe that an employer's duty to comply with OSHA regulations is broader than DuPont suggests.

Congress' primary purpose for enacting the Occupational Safety and Health Act is 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions.' 29 U.S.C. Sec. 651(b). To further this primary goal, Congress imposed statutory duties on employers and employees. Under the Act, an employer's duty is two-fold:

> Each employer—
> (1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
> (2) Shall comply with Occupational Safety and Health standards promulgated under this chapter.

29 U.S.C. Sec. 654(a). The first duty is a 'general duty' imposed on an employer to protect its employees from hazards that are likely to cause death or serious bodily injury. The second duty is a 'specific duty' imposed on employers to comply with the OSHA regulations. These separate duty clauses have been subject to varying interpretations. *Compare,*

*Beatty Equipment Leasing, Inc. v. Secretary of Labor*, 577 F.2d 534, 536–37 (9th Cir.1978); *Marshall v. Knutson Construction Co.*, 566 F.2d 596, 599–600 (8th Cir.1977); *Brennan v. OSHRC*, 513 F.2d 1032, 1036–39 (2d Cir.1975); *Anning–Johnson Co. v. OSHRC*, 516 F.2d 1081, 1091 (7th Cir.1975) (dictum); *with Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 710–11 (5th Cir.1981); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255 (4th Cir.1974).

The difficulty which courts have experienced in attempting to define a particular employer's responsibilities under the Act is due primarily to the varying nature of the separate duty provisions. The general duty clause was intended by Congress to cover unanticipated hazards; Congress recognized that it could not anticipate all of the potential hazards that might affect adversely the safety of workers. Accordingly, it enacted the general duty clause to cover serious hazards that were not otherwise covered by specific regulations. *Southern Ohio Building Systems, Inc. v. OSHRC*, 649 F.2d 456, 458 (6th Cir.1981). Pursuant to Sec. 654(a)(1), every employer owes a duty of reasonable care to protect his employees from recognized hazards that are likely to cause death or serious bodily injury. The protection from exposure to serious hazards is the primary purpose of the general duty clause, *e.g. Anning–Johnson Co. v. United States O.S. & H.R. Com'n*, 516 F.2d 1081, 1086 (7th Cir.1975), and every employer owes this duty regardless of whether it controls the work place, whether it is responsible for the hazard, or whether it has the best opportunity to abate the hazard. In contrast, Sec. 654(a)(2) is the specific duty provision. The class of employers who owe a duty to comply with the OSHA regulations is defined with reference to control of the work place and opportunity to comply with the OSHA regulations. Accordingly, an employers' responsibilities under the Act depend upon which duty provision the employer is accused of breaching. Similarly, the class of per-

sons for whom each of these duty provisions was enacted must be determined with reference to the particular duty in dispute.... We believe that Congress enacted Sec. 654(a)(2) for the special benefit of *all* employees including the employees of an independent contractor, who perform work at another employer's workplace. *The specific duty clause represents the primary means for furthering Congress' purpose of assuring 'so far as possible every working man and woman in the Nation safe and healthful working conditions.'* 29 U.S.C., Sec. 651(b).

*Teal,* 728 F.2d 799, 803–804 (6th Cir.1984) (emphasis added).

We find the rationale and reasoning of the *Teal* line of cases to be persuasive. This reading of the statute is consistent with the rule of statutory construction that safety legislation is to be liberally construed to effectuate the Congressional purpose. *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980). Since the Occupational Safety and Health Act is remedial legislation, and preventative in nature, the Act must be construed liberally in favor of workers whom it was designed to protect. *Bristol Steel and Iron Works, Inc., v. Occupational Safety and Health Review Commission,* 601 F.2d 717 (4th Cir.1979); *see also,* 29 U.S.C. § 651 "Congressional Statement of Findings and Declaration of Purpose and Policy."

Here, as in *Teal,* the "specific duty" provision, Sec. 654(a)(2), is implicated due to the violation of an OSHA regulation. Accordingly, ABC had a duty to comply with the regulations, and the duty ran to employees of other employers and to anyone else whose presence on the site was reasonably foreseeable. *See Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601, 604 (Pa.1985) ("We find that, as a matter of law, the OSHA and ANSI regulations were developed to protect any person rightfully on the scaffolding, not employees only.")

As a subcontractor on the project, Arrington was certainly rightfully on the scaffolding. In addition, Arrington testified in his deposition that he was the president *and primary employee* of Arrington Electric bringing him, for purposes of summary judgment at a minimum, within the rule of *Teal.*

Thus we conclude that the trial court was in error in concluding as a matter of law that OSHA duties cannot run from a general contractor to a subcontractor's employees or the subcontractor himself. This position is consistent with *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1987), where this Court adopted language from the *Teal* court, as follows:

> The specific duty clause [Sec. 654(a)(2) ] represents the primary means for furthering Congress' purpose of assuring 'so far as possible every working man and woman in the Nation safe and healthful working conditions.' 29 U.S.C. § 651(b). (*Teal,* 728 F.2d at 804).

*Sanchez,* 112 Idaho at 618, 733 P.2d at 1243.

■ In summary, we conclude as a matter of law that violation of OSHA regulations may establish negligence *per se* for violation of a duty, that in appropriate circumstances, runs from a general contractor to the employees of a subcontractor, or any other person who may reasonably be expected to be on the work site.

## II.

■ The trial court also determined that ABC owed no duty of care to Arrington due to the application of the so-called open and obvious danger doctrine. The trial court made this ruling without the benefit of our recent opinion in *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989). In *Harrison* this Court retired the open and obvious danger doctrine, overruling prior cases to the extent that they conflicted with *Harrison,* and adopted the principle that "[h]enceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees that come upon their premises." *Harrison,* 115 Idaho at 595, 768 P.2d at 1328.

**892**

Thus, we also reverse the trial court's conclusion of law that the open and obvious danger doctrine presented a bar to Arrington's prosecution of his claim against ABC.

In summary, we reverse and remand this case for proceedings consistent with this opinion. Costs to Norman E. Arrington and Helen Arrington, appellants/cross-respondents.

JOHNSON, J., concurs.

HUNTLEY, J., fully concurred prior to his resignation August 7, 1989.

SHEPARD, J., sat, but did not participate in this opinion due to his untimely death.

BAKES, Chief Justice, dissenting:

I dissent from Part I of the Court's opinion which concludes the trial court erred in ruling that Arrington Brothers Construction Co., Inc. (ABC), had not violated the OSHA regulations in the accident involving the subcontractor, Norman E. Arrington. The doctrine of negligence per se should not apply to the independent contractual relationship between the contractor, ABC, and Norman E. Arrington, for the reasons set out in my dissenting opinion in *Walton v. Potlatch Corp.*, 116 Idaho 892, 781 P.2d 229 (1989).

As to Part II of the majority opinion, I disagree with this Court's ruling in *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989). I believe that the proper rule was that contained in *Bates v. Eastern Idaho Regional Medical Center*, 114 Idaho 252, 755 P.2d 1290 (1988), and would affirm the summary judgment issued by the trial court on that basis.