791 P.2d 1275

**Robert BAKER and Doris Baker, husband and wife, Plaintiffs–Appellants,**

v.

**SHAVERS, INC., an Idaho corporation, Defendant–Respondent.**

No. 17670.

Supreme Court of Idaho.

May 3, 1990.

Holland & Hart, Langroise, Sullivan, Boise, for plaintiffs-appellants. David W. Knotts, argued.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent. Bruce R. McAllister, argued.

JOHNSON, Justice.

This is a personal injury case. Robert and Doris Baker have appealed the jury's determination that Doris and Shavers, Inc. were equally negligent in causing Doris' injuries when she fell in the department store operated by Shavers. The Bakers also have appealed the trial court's denial of their motion for judgment n.o.v. or for a new trial. We reverse the judgment and remand the case for a new trial on the basis of our decision in *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989).

I.

*HARRISON v. TAYLOR* APPLIES RETROACTIVELY.

The jury was instructed that Shavers had no duty to keep their premises safe from dangerous conditions that were known to Doris or that by the exercise of reasonable care should have been observed by her. The Bakers assert that this was error. We agree.

In *Harrison v. Taylor* we abolished the open and obvious danger doctrine. Although the Court's opinion in *Harrison* did not address the question of its application to other cases, in a decision a few months later we applied *Harrison* retroactively. *Arrington v. Arrington Bros. Constr.,* 116 Idaho 887, 891–92, 781 P.2d 224, 228–29 (1989). Therefore, we are bound to apply it retroactively in this case also. We point out that since *Harrison* was decided after the final judgment was entered in this case, the trial court was acting in good faith in relying on prior decisions of this Court upholding the open and obvious danger doctrine.

In *Arrington* we did not state our rationale for applying *Harrison* retroactively. However, the rationale is implicit in our decision. In determining whether a decision changing a rule of law previously established should be applied retroactively or prospectively, we have held that we should evaluate "1) the purpose of the decision, 2) reliance on the prior rule of law, and 3) the effect upon administration of justice." *Jones v. Watson,* 98 Idaho 606, 609, 570 P.2d 284, 287 (1977).

The purpose of the decision in *Harrison* was to give injured invitees the benefit of the comparative negligence statute that was enacted by the legislature in 1971. I.C. § 6–801 (1979). By applying *Harrison* retroactively in *Arrington,* we have carried out the intention of the legislature by extending the comparative negligence rule to those invitees who have been injured since the comparative negligence statute went into effect. We note in passing that the applicability of comparative negligence was not raised as an issue in *Bates v. Eastern Idaho Regional Medical Center,* 114 Idaho 252, 755 P.2d 1290 (1988). *Bates* was the most recent decision of this Court applying the open and obvious danger doctrine prior to *Harrison.*

As to reliance on the open and obvious danger doctrine, we can imagine it is possible that some landowners may have al-

lowed dangerous conditions to remain on their property because they believed they had protection under our prior decisions. However, until *Harrison* this Court had not had the opportunity to address the implication of the comparative negligence statute for the viability of the open and obvious danger doctrine. Therefore, there could have been no reliance on the doctrine in the face of a challenge under I.C. § 6–801.

We acknowledge that the effect of the retroactive application of *Harrison* in *Arrington* may be to require the retrial of some cases that have not reached final judgment. However, we are confident that our efficient and hardworking trial judges will be able to accommodate the relatively few cases that must be retried because of the change in the law of liability to an invitee.

## II.

## QUESTIONS OF LAW NECESSARY TO THE FINAL DETERMINATION OF THE CASE.

Since the result of our decision as to the applicability of *Harrison* is a reversal of the judgment and a remand for a new trial, it is appropriate for us to "pass upon and determine all the questions of law presented upon appeal the resolution of which are necessary to the final determination of the case." I.C. § 1–205 (1979); *Robertson v. Richards*, 115 Idaho 628, 657, 769 P.2d 505, 534 (1987) (on rehearing 1989).

We conclude that all the issues raised about the trial court's instructions to the jury are resolved by our primary holding as to the applicability of *Harrison*. We are confident that the trial court will be able to formulate correct instructions to the jury based on the law of comparative negligence.

This leaves three issues that were raised on appeal that may reoccur in a new trial: (1) the exclusion of the testimony of Bakers' expert concerning the reason for the absence of prior accidents at the location where Doris was injured and concerning the duty of the Shavers to keep the premises safe during the remodeling of their store, (2) the admission in evidence of the shoes Doris was wearing at the time she was injured and (3) the exclusion of a demonstration of Doris walking in the shoes.

■ We give our trial courts broad discretion in the admission of evidence at trial and will reverse their decisions on these evidentiary questions only when there has been a clear abuse of discretion. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). We conclude that the trial court did not abuse its discretion in making any of the rulings to which the Bakers address their appeal.

■ We consider first the exclusion of expert testimony offered by the Bakers to explain why there had not been prior accidents at the location where Doris was injured. The Bakers presented the testimony of the manager of the store that there had been no complaints about the ramp that allegedly caused Doris to fall. The manager testified that previously there had been a wall in the vicinity of the ramp that prevented access to the side of the ramp. The testimony of the expert offered by the Bakers would have attempted to explain why there had not been prior complaints. In light of the explanation that had already been given by the manager, we believe the trial court was within its discretion not to allow the expert's testimony on this issue. We note also that the trial court did allow the Bakers to present evidence of two other accidents that had occurred on the ramp prior to Doris' fall.

■ As to the exclusion of expert testimony of the duty of the Shavers to keep the premises safe during the remodeling of the store, the trial court pointed out in its ruling that there were no workmen working in the store, nor was there any construction going on at the time of the accident. Therefore, the necessary premise for the expert's testimony was not present.

■ Next, we consider the admission of the shoes that Doris was wearing when she was injured. In our view the shoes were clearly relevant to the question of Doris' negligence. That does not mean that we believe she was negligent in wearing the shoes, but their characteristics were certainly germane to the jury's consideration of the cause of her fall.

■ As to the exclusion of a demonstration of Doris walking in the shoes, while we cannot see what harm there would have been to allowing her to do so, the trial court had in mind the fact that Doris had been coming to court in similar high heeled shoes during the trial. Also, testimony was allowed as to Doris' ability to walk in high heeled shoes and the fact that she had won a dance contest wearing them. In light of these circumstances, we do not believe the trial court abused its discretion in excluding the demonstration.

### III.

### CONCLUSION.

We reverse the judgment and remand for a new trial.

We award costs to the Bakers.

BOYLE and McDEVITT, J., concur.

BISTLINE, J., concurs in result.

BAKES, Chief Justice, concurring and dissenting in part:

I concur with the Court's opinion that *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989), is now the law of this state, even though I also believe it was wrongly decided as appropriately pointed out in the dissent in that case. However, stability in the law requires that the precedents of this Court not vacillate merely because there is a change in the composition of the Court when a particular decision is rendered. Accordingly, I accept *Harrison v. Taylor* as the law of this state. However, I disagree with the Court's opin-

ion today that *Harrison v. Taylor* should be applied retroactively. Other than that, I agree with the majority opinion as written.

Any determination of whether *Harrison v. Taylor* should be applied retroactively should start with an analysis of the Court's opinion in *Harrison*. In *Harrison*, this Court reviewed the longstanding open and obvious danger doctrine and held that:

> The open and obvious danger doctrine, born in the era ... of contributory negligence, has been abolished legislatively through the adoption of I.C. § 6–801.

115 Idaho at 593, 768 P.2d at 1326.

In arriving at this conclusion, the *Harrison* Court reasoned, in essence, that I.C. § 6–801 (the Idaho comparative negligence statute) and the rationale underlying that statute, *i.e.*, abolition of the common law doctrine of contributory negligence, applied with equal force to the open and obvious danger doctrine. According to the majority in *Harrison*, this holding was in turn supported by our decision in *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985), wherein we held that the comparative negligence statute also abolished the defense of implied assumption of risk. I find this rationale defective in that (1) the comparative negligence statute, by its very terms, does not in any manner deal with the open and obvious danger doctrine; and (2) that our holding in *Salinas* does not lend support to the decision in *Harrison.*

I.C. § 6–801 does not deal with the open and obvious danger doctrine. That doctrine is predicated on the longstanding legal premise that there is *no duty* owed by a landowner to an invitee in situations where the dangerous condition or activity is known, or is open and obvious to the invitee. *Bates v. Eastern Idaho Regional Medical Center*, 114 Idaho 252, 755 P.2d 1290 (1988); *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980); *Otts v. Brough*, 90 Idaho 124, 409 P.2d 95 (1965). This principle had been reaffirmed in a number of cases, most recently in the *Bates v. Eastern Idaho Regional Medical Center* case, decided only eight months be-

fore the *Harrison* decision. We stated in *Bates* that:

> Hence, we conclude that a majority of this Court continues to adhere to the orthodox view ... that "[t]he duty to keep the premises safe for an invitee only requires the exercise of ordinary care, and does not extend to dangerous conditions which are known to the invitee, or which are or by the exercise of ordinary care should have been observed by the invitee."

114 Idaho at 254, 755 P.2d at 1292.

The first element of a cause of action based upon negligence is a duty, recognized by law, requiring the defendant to conform his conduct to a certain standard of care. *Without a duty, there is no negligence. Northcutt v. Sun Valley Co.*, 787 P.2d 1159 (1990); *Brizendine v. Nampa–Meridian Irr. Dist.*, 97 Idaho 580, 548 P.2d 80 (1976). The effect of the open and obvious danger doctrine was that a landowner had no duty to alter his premises and was not guilty of any negligence if an invitee was injured by. a dangerous condition which was known or which was obvious to the invitee. *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980).

The comparative negligence statute did not create negligence where it had not existed before. The statute did not create any duties which could be the basis for a negligence claim. Rather, the comparative negligence statute changed the prior law of contributory negligence which held that any amount of negligence on the part of a plaintiff would preclude the plaintiff from recovery. Under the comparative negligence statute, a plaintiff's contributory negligence would no longer defeat the plaintiff's claim if the plaintiff is less negligent than the defendant against whom the claim is made. The comparative negligence statute does not even come into play, and require a comparison of negligence, unless negligence on the part of both the defendant and the plaintiff has been established. As we stated in *Rehwalt v. American Falls Reservoir Dist. No. 2*, 97 Idaho 634, 550 P.2d 137 (1976):

> If, upon retrial, appellant [defendant] is found to have breached its duty, then, and only then, the issue of respondent's [plaintiff's] contributory negligence must be determined. Such determination must be made in light of well settled law that the plaintiff-respondent must exercise the care of a reasonable and prudent man for his own protection and only if his failure to do so was a contributing cause to his injuries must an inquiry be made as to the proportion of negligence of both parties.

97 Idaho at 637, 550 P.2d at 140.

Under the open and obvious danger doctrine, if the dangerous condition is open and obvious, the landowner has no duty to either alter or warn of the dangerous condition; and, having no duty, there can be no negligence; if there is no negligence on behalf of the landowner, there is nothing to compare to the plaintiff's negligence, and therefore, as the Court stated in *Rehwalt v. American Falls Reservoir Dist. No. 2*, the comparative negligence statute does not come into operation. The mere fact that the legislature saw fit to abolish the doctrine of contributory negligence, which previously precluded a plaintiff from recovery if he was negligent at all, simply has no bearing on the open and obvious danger doctrine which operates to relieve a defendant from any duty to take remedial measures to alter or warn of a condition on his premises which is open and obvious. If the danger is known or obvious, a person entering the premises can choose to proceed, or not to proceed, in the face of the danger. However, the landowner is not negligent if the invitee chooses to proceed in the face of the dangerous condition. *Bates v. Eastern Idaho Regional Medical Center*, 114 Idaho 252, 755 P.2d 1290 (1988). In most cases the question of whether the danger is known, or open and obvious, is a question of fact for the jury.

I.C. § 6–801 does not, by its terms, or by any plausible implication, either impose duties on landowners or create negligence where none existed before. All the statute

does is require a comparison of negligence between the plaintiff and the defendant—once such negligence has been established—and an apportionment of liability based upon their respective degree of fault.

The *Harrison* Court, in order to support its conclusion, also incorrectly relied on *Salinas v. Vierstra*. *Salinas* simply does not support the abrogation of the open and obvious danger doctrine. Regarding *Salinas*, the majority in *Harrison* stated that:

> In *Salinas v. Vierstra*, ... we concluded that application of the implied assumption of risk doctrine is untenable in the era of comparative negligence established by I.C. § 6–801.

115 Idaho at 591, 768 P.2d at 1323. The *Harrison* Court therefore went on to conclude that:

> We believe there are no significant differences between the implied assumption of risk and the open and obvious danger defenses.

*Id.*

The foregoing statement fails to recognize that assumption of the risk, like contributory negligence, focuses on the conduct of a plaintiff, while the open and obvious danger doctrine focuses on the premises of a defendant and relieves that owner or occupier of the premises of any duty to alter or warn of the dangerous conditions on the premises if they are known to or open and obvious to invitees. Only if the danger is not known or open and obvious does a duty arise, which may be a duty to warn, a duty to cordon off the dangerous condition, or perhaps, under certain circumstances, a duty to alter or repair. While the end "effect" of the assumption of the risk defense, and the open and obvious danger doctrine, was to deny the plaintiff's recovery, that does not mean that they are the same thing, as the Court in *Harrison* assumed in holding that the legislature by enacting the comparative negligence statute intended to abolish the open and obvious danger doctrine. The comparative negligence statute imposed no duties on defendants, created no negligence, and simply had no impact or bearing on the open and obvious danger doctrine. The Court in *Salinas* recognized this when it stated:

> The result of unreasonably assuming a risk is also to preclude plaintiff from recovery. The reason for this is that an unreasonable assumption of risk is but a form of contributory negligence.

107 Idaho at 988, 695 P.2d at 373. The holding in *Salinas* is a logical outgrowth of the recognition that implied assumption of risk is but a form of the contributory negligence defense. As a form of contributory negligence, it was subject to the comparative negligence statute. Hence, our holding in *Salinas*. However, the open and obvious danger doctrine was formulated based upon the practical balancing of rights between a landowner and his invitees, holding that where a condition or activity is so open and obvious that a reasonable person should have realized and appreciated the risk, a landowner has *no duty to alter that condition*. *Bates v. Eastern Idaho Regional Medical Center*, 114 Idaho 252, 755 P.2d 1290 (1988).

As was succinctly stated by the Supreme Court of Wyoming in *Sherman v. Platt County*, 642 P.2d 787 (Wyo.1982):

> Comparative negligence only abrogated absolute defenses involving the plaintiff's own negligence in bringing about his or her injuries.... However, it did not impose any new duties of care on prospective defendants. Since the law of this state [Wyoming] is to the effect that there is no duty to remove or warn of an obvious danger or one that is known to the plaintiff, no change was accomplished in that law by the adoption of comparative negligence.

642 P.2d at 790.

In his dissenting opinion to *Harrison v. Taylor*, Justice Johnson stated that:

> Today, this Court announces the demise of a rule of law that was reaffirmed by a majority of this Court as recently as May of last year. This decision causes me to wonder how much confidence the bench and bar of this state will continue to

have in the legal principles recently announced or reaffirmed by this Court.

115 Idaho at 598, 768 P.2d at 1331. I share Justice Johnson's concern about the adverse impact the *Harrison* decision had on the confidence of the bench and bar relative to our jurisprudence. As Justice Cardozo stated, "Adherence to precedent should be the rule, and not the exception." [1] The need for stability and continuity in the law is not a cliche' to be uttered by courts in passing. It is a fundamental tenet of our jurisprudence. The *Harrison* majority professed to acknowledge that tenet, but concluded in the final analysis that the need to adapt to the changing needs of society outweighs the respect customarily accorded precedence. The *Harrison* Court stated:

> We recognize the role *stare decisis* plays in the judicial process. But we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case, has proven over time to be unjust or unwise.

115 Idaho at 595, 768 P.2d at 1328. Curiously, the *Harrison* Court's decision was not based on that Court's determination that the open and obvious danger doctrine was unjust, unwise or archaic. The doctrine had been reaffirmed only eight months previously in *Bates v. Eastern Idaho Regional Medical Center, supra.* Rather, the decision in *Harrison* was based on the rationale that the legislature, in enacting the comparative negligence statute, had abolished that doctrine. However, the adoption of the comparative negligence statute "did not create impose any new duties on care on prospective defendants." *Sherman v. Platt County, supra.* It merely permitted a plaintiff to recover, even though negligent, if the plaintiff's negligence was less than that of the defendant. Accordingly, I believe *Harrison v. Taylor* misapplied the comparative negligence statute. Nevertheless, I acquiesce in and follow the *Harrison* holding because I believe stability in the law would be jeopardized by the ping-pong effect of overruling *Harrison v. Taylor* and reinstating this Court's decisions in *Bates v. Eastern Idaho Regional Medical Center, supra; Tommerup v. Albertson's, Inc., supra; Otts v. Brough, supra,* and other prior cases.

That conclusion does not require, however, that the *Harrison* decision be applied retroactively. The Court today concludes that *Harrison v. Taylor* should be applied retroactively. That decision rests on the proposition that, "Although the Court's opinion in *Harrison* did not address the question of its application to other cases, in a decision a few months later we applied *Harrison* retroactively. *Arrington v. Arrington Bros. Construction,* 116 Idaho 887, 781 P.2d 224 (1989). Therefore we are bound to apply it retroactively in this case also." *Ante* at 697, 791 P.2d at 1276 The majority further states, "In *Arrington* we did not state our rationale for applying *Harrison* retroactively. However, the rationale is implicit in our decision." *Ante* at 697, 791 P.2d at 1276. The majority goes on to render explicit that which was purportedly "implicit" in *Arrington,* by analyzing and applying the retroactivity test set forth in *Jones v. Watson,* 98 Idaho 606, 570 P.2d 284 (1977).

The majority states that, "In determining whether a decision ... should be applied retroactively or prospectively, ... we evaluate '(1) the purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon administration of justice.'" *Ante* at 697, 791 P.2d at 1276. In evaluating whether there has been reliance on a prior rule of law, and in determining the what effect a change would have upon the administration of justice, we should first look to the decision of the *Harrison* Court itself, which states:

> Accordingly, we join the numerous state and federal courts noted above and hereby retire the open and obvious danger doctrine. *Henceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances toward invitees who come upon their premises.*

---

1. Cardozo, The Nature of the Judicial Process, 149–151 (1921).

115 Idaho at 595, 768 P.2d at 1328 (emphasis added). The *Harrison* Court's opinion itself states, "Henceforward, owners and occupiers of land will be under a duty ...," which suggests that the Court in *Harrison* recognized that it was reversing a long line of prior decisions of this Court, and the decision should only be applied "henceforward." Furthermore, the Court in *Harrison*, after making that statement, cited and relied upon our case of *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), which had abolished the longstanding rule of sovereign immunity in the courts in the State of Idaho. The Court in *Smith* did not apply its opinion retroactively, but expressly made it prospective to "all future causes of action arising on or after 60 days subsequent to the adjournment of the First Regular Session of the Forty First Idaho State Legislature...." 93 Idaho at 808, 473 P.2d at 950. Just last year, this Court again recognized that decisions which are a departure from longstanding prior law will only be applied prospectively. In *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), we stated, "We recognize that our decision today is a departure from prior law. Accordingly, it will only be applied prospectively to breaches or violations of the covenant occurring after the effective date of this opinion, and to claims in this case," *citing Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), which the Court in *Harrison* relied upon. 116 Idaho at 638, 778 P.2d at 750. Prior to *Harrison*, no one—not even the membership of this Court—had any suspicion that I.C. § 6–801 had any bearing upon the open and obvious danger doctrine. The issue had never been raised in any of the numerous cases decided by this Court which had reaffirmed the open and obvious danger doctrine, including our opinion in *Bates v. Eastern Idaho Regional Medical Center, supra,* which occurred only months prior to the *Harrison* decision.[2] Accordingly, I believe that the Court today errs when it concludes that

"there could have been no [justifiable] reliance on the doctrine in the face of a challenge under I.C. § 6–801." *Ante* at 698, 791 P.2d at 1277. Merely because the Court in *Harrison* found an application for I.C. § 6–801 which no one had ever found before and which, in my opinion, is totally unwarranted, does not mean that there has not been a justifiable reliance by the bar and the trial courts of this state on the open and obvious danger doctrine. Nor does the Court's opinion today consider "the effect upon the administration of justice" which may result from applying the *Harrison* decision retroactively to causes of action which accrued both before and after our decision in *Bates v. Eastern Idaho Regional Medical Center,* which upheld the open and obvious danger doctrine. As a result of our decision in *Bates,* numerous actions may have been filed, cases will have been settled, or will have gone to trial based upon this Court's decision in *Bates,* and settlements will have occurred assuming that the longstanding rule of law announced in *Bates* would not be immediately swept aside. Legitimate decisions as to whether or not to alter or repair premises, or to give warnings, or cordon off areas where construction or other dangers were present may have been made based upon our reaffirmance of the open and obvious danger doctrine in *Bates.* Decisions may have been made whether or not to insure risks which otherwise would have been made differently had parties known that our decision in *Bates* would be immediately overruled. Those were all reasons given by this Court in *Smith v. State, supra,* for making a similar reversal of a longstanding rule of law prospective only. Based upon those same reasons, I believe that a prospective application of *Harrison* is mandated by our recent decisions in *Metcalf v. Intermountain Gas Co., supra;* and *Smith v. State, supra.*

Our decision in *Arrington v. Arrington Bros. Construction,* 116 Idaho 887, 781

---

2. Ironically, the appellant in *Harrison v. Taylor* did not raise the issue of the application of I.C. § 6–801 to the open and obvious danger doctrine in its briefs on appeal. The issue was apparently raised *sua sponte* by the Court.

P.2d 224 (1989), does not require a contrary result. As the Court's opinion today acknowledges, the Court in *Arrington,* while citing the *Harrison* decision, did not address the question of the retroactive application of *Harrison.* The Court in the *Arrington* case had reversed a summary judgment granted by the trial court based upon the *Arrington* Court's conclusion that an employer's violation of OSHA regulations was negligence *per se,* not only as to the employer's own employees, but to independent contractors employed at the work site. The Court reversed the summary judgment, ordering a trial and noting in the penultimate paragraph of its opinion that,

> The trial court made this ruling [applying the open and obvious danger doctrine] without the benefit of our recent opinion in *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989). In *Harrison* this Court retired the open and obvious danger doctrine, overruling prior cases to the extent that they conflicted with *Harrison,* and adopted the principle that "[h]enceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances toward invitees that come upon their premises."

116 Idaho at 891, 781 P.2d at 228.

Today is the first time that this Court has specifically had raised before it the issue of whether or not *Harrison v. Taylor* should be retroactively applied. In my opinion, *Harrison v. Taylor,* being a departure from a long line of prior case law, should only be applied prospectively. *Metcalf v. Intermountain Gas Co., supra; Smith v. State, supra.* Regardless of whether or not I.C. § 6–801 has application to the open and obvious danger doctrine, the reliance on the prior rule of law by the bar, the trial courts, and even this Court as recently as *Bates v. Eastern Idaho Regional Medical Center,* together with the adverse effect that a retroactive application of *Harrison* will have upon all of those parties who justifiably placed reliance upon our decision in *Bates v. Eastern Idaho*

*Regional Medical Center,* in making decisions as to the property and insurance, in actions filed, and cases settled, makes me conclude that the same principles behind *stare decisis* require that *Harrison v. Taylor* only have prospective application.

BISTLINE, Justice, concurring in part, and dissenting in part.

I heartily endorse the application of *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989), to this and all other cases. The abolition of the open and obvious danger defense is the only appropriate step to be taken by this Court after the legislature passed the comparative negligence statutes in 1971. A comparative negligence regime cannot countenance a defense that allows for the complete and absolute exoneration of those who may be most at fault for the creation or maintenance of a dangerous condition.

While I concur in the majority's application of *Harrison,* I cannot concur in the majority's conclusion as to certain evidentiary issues which remain as poorly resolved in this Court as in the court below. These issues should be left for the trial court to determine during the new trial, not for an appellate court to determine prematurely from a necessarily limited record on appeal. The majority recognizes that these issues "may reoccur in a new trial" (*see* at 698, 791 P.2d at 1277), but I can divine no reason for foreclosing the litigants from approaching the new trial with a *tabula rasa,* unfettered by evidentiary rulings made during the consideration by an appellate court of an old and discarded proceeding.

The majority uses I.C. § 1–205 to support its foray into three evidentiary issues. That statute states that "the court shall pass upon and determine all the *questions of law* involved in the case presented upon such appeal, and *necessary to the final determination of the case.*" I.C. § 1–205 (emphasis added). This provision is the crutch used by the majority to reach evidentiary issues. But the issues involve the exclusion or admission of evidence, and are

neither properly characterized as questions of law, nor characterized as necessary to the final determination of the case. The majority recognizes this, because instead of applying the standard of free review (which is the proper standard of review for questions of law), the majority refers to the clear abuse of discretion standard. *See* at 698, 791 P.2d at 1277, where the majority cites to *State v. Smith.* The correct standard of review should be no review at all, because the evidentiary rulings of the trial court may be mixed rulings of law and fact that may not reoccur during the new trial, and are not necessary to the final determination of the appeal. I address the three evidentiary issues raised by the majority in turn.

The first issue is whether the trial court properly excluded expert testimony offered by the Bakers to discuss the accident location. The majority describes what the expert would have testified to in this manner: "We consider first the exclusion of expert testimony offered by the Bakers to explain why there had not been prior accidents at the location where Doris was injured." At 698, 791 P.2d at 1277. In the same paragraph, the paragraph that purportedly applies the clear abuse of discretion standard of review to the trial court's evidentiary rulings, the majority concludes that "the trial court did allow the Bakers to present evidence of two other accidents that had occurred on the ramp prior to Doris's fall." *Id.* There either were, or were not, other accidents at the same location where Doris was injured. The answer to that question is for determination at trial, and certainly not for an appellate court to determine before trial!

The second issue is the offer of expert testimony concerning the safety issues that must be addressed by Shavers while the store was being remodeled. The majority excludes this evidence, on the ground that "there were no workmen working in the store, nor was there any construction going on at the time of the accident." At 698, 791 P.2d at 1277. That fact says absolutely nothing about the value of the expert's offered testimony! The remodeling of the store may have been interrupted for any number of days, but the workers' tools, ramps, etc., would still be in place at the store, and the store managers or owners would still be charged with keeping the premises safe. Once again, the question of whether the store was in the process of being remodeled is a question of fact to be determined at the trial, and most assuredly is not a question of law for an appellate court to determine before trial.

The third evidentiary issue concerns the injured plaintiff's shoes. It appears from the majority opinion that the shoes were admitted into evidence, but that the plaintiff was not allowed to exhibit her ability to walk in them. Hence the shoes were admitted as an exhibit wholly unrelated to the feet of their owner and her capabilities of navigation. Obviously the shoes had been fitted to her by some store, perhaps Shavers. This is not the case of a lady choosing to walk over rough or slippery terrain in high heels, but rather the sad culmination of a lady gone shopping, who while browsing about in a store encountered an unmarked change in the flooring's supposed state of being level. The heels were obviously offered by defendant in order to suggest to the jury that the plaintiff was thereby and somehow negligent, leaving the jury to any conjecture which might come to mind by which she may have been careless regarding a pitfall concerning which there were no precautions. This is more farfetched than anything previously seen. Wearing heels into a store does not a case of negligence make. Nor is there any authority offered for such an outrageous proposition. But, if the shoes are offered into evidence, at the very least the trial court should not admit the shoes without allowing the owner of the shoes to show the jury that she was in no way impeded in her ability to walk about therein. Such might have enlivened an otherwise dull trial. A desperate defendant might well attempt the tactic, but an astute district court would have to be shown some plausible justification for succumbing to it. Here there is none. Here the Idaho system of administering justice will take a consid-

erable downward plunge in the eyes of the women who read the Court's opinion, and likely their menfolk as well, of which I am one. Neither as a justice nor as an ordinary person of reason am I able to join an opinion which upholds the admission of the shoes and all in the same breath upholds the trial court telling the plaintiff, "No, you will not be allowed to display to the jury that you encounter no difficulty in walking with them."

The majority seeks to ameliorate its meandering with a discussion of this third issue by pointing out that the harm of admitting the shoes was itself ameliorated by the admission of testimony concerning the plaintiff's ability to walk and dance in heels: "In light of *these circumstances,* we do not believe the trial court abused its discretion in excluding the demonstration." At 699, 791 P.2d at 1278 (emphasis added). How this suffices as a reasonable explanation escapes me, but clearly portrays the frivolity of this rhetorical exercise undertaken by the majority in attempting to justify the unjustifiable.

It is grossly inappropriate for this Court to muddy the waters of the new trial by discussing old evidentiary issues and old circumstances. Rather the Court should simply declare the error, and remand for a new trial. Idaho Code § 1–205 neither requires nor allows such appellate interference.